# Patricia Trombley and Georgia Lique v. Bellows Falls Union High School District No. 27, et. al.

[624 A.2d 857]

No. 91-392

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed February 26, 1993

*Stephen L. Fine*, Athens, for Plaintiffs-Appellants.

*Lawrence Miller* and *John Paul Faignant* of *Miller & Faignant*, Rutland, for Defendants-Appellees.

**Dooley, J.** Plaintiffs, residents of the Town of Rockingham, brought this action against their local union high school district, its board of directors, the chair of the board and the superintendent of the district, alleging that the board violated the open meeting law, 1 V.S.A. §§ 311–314, and the access to public records act, 1 V.S.A. §§ 315–320, in denying them information about a teachers' grievance. The Windsor Superior Court found no violation of either law. Plaintiffs appeal, arguing that the court misapplied the relevant laws. We reverse and remand.

This controversy started when the board reduced the budget for the district, in response to voter rejection of an earlier budget, by cutting some of the allocation for sports activities. Three athletic instructors complained about the action in a letter, sent out on official high school stationery, to voters in the district. The board, believing that the instructors had misused the school letterhead, voted to condemn the actions of the instructors. At a special meeting to reconsider the budget cuts, the board read its condemnation statement to the public.

The three instructors responded by filing a grievance contesting the condemnation. The grievance came before the board on July 19, 1990. Under the contract between the board and the Windham Northeast Education Association, the union representing teachers in the district, the grievants requested that the grievance be heard in executive session. The board agreed and so heard the grievance, which it denied on July 30, 1990.

On August 2, 1990, one of the plaintiffs requested to see the grievance and the response to it by the board, the superintend-

ent and the principal of the high school. The superintendent denied this request. Plaintiff appealed the superintendent's decision to the chair of the board, who put it on the agenda for the next board meeting. On advice of counsel, the board adopted in open session on September 10, 1990, a resolution formally denying the grievance for the reasons stated in the July 30th written decision. The board denied plaintiff's appeal on the grounds that the documents requested were exempt from disclosure under 1 V.S.A. § 317(b)(7). This suit followed.

In a lengthy complaint, plaintiffs sought (1) a declaration that the board had violated the open meeting law, together with an injunction against further violations, (2) an order requiring disclosure of the documents, (3) a declaration that the board chair did not act timely in response to the appeal of the superintendent's denial of the documents, and (4) costs. The Windham Northeast Education Association was allowed to intervene as a party defendant. On cross-motions for summary judgment, the court dismissed the complaint, holding that the grievance could be considered in executive session pursuant to 1 V.S.A. § 313(a)(1), that the decision on the grievance was valid, and that the documents are exempt from disclosure under 1 V.S.A. § 317(b)(7) because they relate to a personnel matter.

Plaintiffs first attack the court's decision that the grievance could be considered in executive session, claiming that the statutory requirements were not met.[1] Specifically, they argue that the grievance hearing was a meeting of a public body that was required to be open to the public under 1 V.S.A. § 312(a), and that it could not be held in executive session under § 313(a)(1) because the statutory prerequisite that "premature general public knowledge would clearly place the . . . public body[] or person involved at a substantial disadvantage" was not present.[2] Defendants argue, and the court held, that the language

---

[1] Defendants acted in accordance with the collective bargaining agreement in holding the grievance hearing in executive session. Defendants have not argued that the agreement controls over the provisions of the open meeting law. As is noted *infra*, with regard to the public records claim, we could not allow the public's right of access to be overridden by a contract between the public agency and its employees.

[2] Plaintiffs also argue that the board *decided* the grievance in executive session in violation of the statute. See 1 V.S.A. § 313(a) ("No formal or binding

quoted above is an expression of why the Legislature found that grievances could be conducted in private, and not a prerequisite to an executive session in each case.

▮ The open meeting law implements the command of Chapter I, Article 6 of the Vermont Constitution that officers of government are "trustees and servants" of the people and are "at all times, in a legal way, accountable to them." See 1 V.S.A. § 311; *Animal Legal Defense Fund, Inc. v. Institutional Animal Care & Use Committee,* 159 Vt. 133, 136, 616 A.2d 224, 225 (1992). Although this Court has not previously addressed the question, courts in other jurisdictions have held that similar public meeting laws are entitled to a liberal construction in support of the goal of open access to public meetings for members of the public. See, e.g., *Hinds County Board of Supervisors v. Common Cause,* 551 So. 2d 107, 110 (Miss. 1989); *Grein v. Board of Education,* 343 N.W.2d 718, 723 (Neb. 1984). Exemptions to these laws must be strictly construed. See, e.g., *Board of Police Commissioners v. Freedom of Information Commission,* 470 A.2d 1209, 1212 (Conn. 1984); *Orford Teachers Association v. Watson,* 427 A.2d 21, 23 (N.H. 1981). Further, in construing a statute, we presume that language is inserted in a statute advisedly. *Clymer v. Webster,* 156 Vt. 614, 625, 596 A.2d 905, 912 (1991). Thus, we do not construe the statute "in a way that renders a significant part of it pure surplusage." *State v. Beattie,* 157 Vt. 162, 165, 596 A.2d 919, 921 (1991).

Although the open meeting exemption in question covers consideration of grievances, it is subject to a proviso that requires circumstances "where premature general public knowledge would clearly place the . . . public body, or person involved at a substantial disadvantage."[3] 1 V.S.A. § 313(a)(1). The board did not make a finding that the proviso applied in this case and defendants do not seriously contend that it could have made such

action shall be taken in executive session except actions relating to the securing of real estate options under subdivision (2) of this section."). In view of our disposition of their main argument, we do not reach this claim.

[3] The court did not rely on § 313(a)(4), which covers a "disciplinary . . . action against a public . . . employee," and we have not considered that exemption. Because the teachers were not suspended or dismissed, the specific section on hearings in those circumstances, 16 V.S.A. § 1752(b), does not apply.

a finding. The condemnation that the teachers grieved was public, as was the reason for the condemnation. There is no reason why "premature general public knowledge" would disadvantage the teachers or the board. Indeed, it is not the timing of disclosure that is in issue; defendants want to prevent disclosure at any time.

We cannot accept the trial court's conclusion that the proviso is merely a statement of policy and not a requirement. That conclusion is inconsistent with our canons of statutory construction and serves to expand, rather than strictly construe, the access exemption. Apparently, the trial court felt that application of the proviso in each individual case would be unworkable. We cannot agree. Open meeting laws exist in every state and at the federal level. See Note, *New Jersey's Open Public Meetings Act: Has Five Years Brought "Sunshine" Over the Garden State?*, 12 Rutgers L.J. 561, 561–62 nn.4 & 5 (1981) (itemizing the state statutes and the federal statute). Most jurisdictions have personal privacy exemptions that require a public agency to evaluate the impact of public access in each case before it. See, e.g., *Common Cause v. Nuclear Regulatory Commission*, 674 F.2d 921, 932–33, 938 (D.C. Cir. 1982) (evaluating exemptions 9(B) and 6 of the Federal Sunshine Act); *Attorney General v. School Committee of Northampton*, 375 N.E.2d 1188, 1190 (Mass. 1978). It is not unworkable for a public body to make a careful analysis of need before deciding to go into executive session. In fact, in the absence of a case-by-case determination, the legislative policy of openness would be frustrated by the impossibility of describing in categorical terms, without being overinclusive, the permissible subjects of executive sessions. The exercise of judgment is inevitable.

The trial court erred in granting summary judgment to defendants on the open meeting claim.[4] We cannot find, however,

---

[4] Because the proviso of § 313(a)(1) does not apply, it is unnecessary for us to decide whether the executive session was otherwise valid within the language of the statute. See 1 V.S.A. § 313(a) (a public body may not hold an executive session except to *consider* one or more of the authorized matters). We note that, in construing a similar statute, the Arkansas Supreme Court has held that the exemption covers the agency's decision-making process but not the hearing of testimony. *Arkansas State Police Commission v.*

that plaintiffs made the requisite showing to obtain relief. The open meeting law provides for a private right of action for a "person aggrieved by a violation of the provisions of this subchapter" to apply to superior court "for appropriate injunctive relief or for a declaratory judgment." 1 V.S.A. § 314(b). The complaint was filed long after the meeting in question, and there is no allegation that plaintiffs ever raised the issue at the time of the meeting or that they were even at the meeting. As shown by the summary judgment papers, plaintiffs' presuit actions were directed at obtaining access to the documents. Apparently, the issue first surfaced at a school board meeting some two months after the grievance hearing.

■ We need not define "aggrieved" in order to hold that plaintiffs must make some showing of injury to obtain relief. In the absence of an aggrieved individual, the attorney general may bring suit to enforce the statute. *Id.* On remand, the trial court must determine whether plaintiffs have the requisite standing to bring their open meeting claim.

■ The second claim involves plaintiffs' right of access to the grievance decision and related documents. The trial court ruled that the documents were covered by an exception to the disclosure requirements of the access to public records act (Public Records Act), which covers:

> (7) personal documents relating to an individual, including information in any files maintained to hire, evaluate, promote or discipline any employee of a public agency, information in any files relating to personal finances, medical or psychological facts concerning any individual or corporation . . . .

1 V.S.A. § 317(b)(7). Before we analyze the language of the exception, we stress that our overall approach to cases arising under the Public Records Act is similar to that for open meeting law cases. The Act is to be construed liberally. *Id.* § 315. It implements the policy that "the public interest clearly favors the

---

*Davidson,* 490 S.W.2d 788, 790 (Ark. 1973). We also note that the Legislature originally created an exemption for "deliberations" of quasi-judicial bodies, 1 V.S.A. § 313(a)(7) (main volume), but that exemption was repealed and another substituted for it.

right of access to public documents and public records," and under this policy "the exceptions listed in § 317(b) should be construed strictly against the custodians of the records and any doubts should be resolved in favor of disclosure." *Caledonian-Record Publishing Co. v. Walton*, 154 Vt. 15, 20, 573 A.2d 296, 299 (1990). In a dispute over access in the trial court, the burden is on the agency to sustain its action. 1 V.S.A. § 319(a). In relying on an exception to disclosure, the agency "cannot discharge this burden by conclusory claims or pleadings"; it must "make the specific factual record necessary to support the exception claim." *Finberg v. Murnane*, 159 Vt. 431, 438, 623 A.2d 979, 983 (1992).

 Unless an exception applies, there is no doubt that the right of access extends to the records plaintiffs seek.[5] The Bellows Falls Union High School District is a public agency subject to the disclosure requirements of the Public Records Act. See 1 V.S.A. § 317(a) (public agency includes "agency, board, committee, department . . . of any political subdivision of the state"). The grievance and the board's written action on it are public records subject to disclosure. See *id.* § 317(b) (public record includes all "papers . . . or any other written or recorded matters produced or acquired in the course of agency business").

Before engaging in further discussion of this claim, we note that the trial court did not ground its decision on the labor contract provision between the school board and the teachers' association, which made grievances confidential. We agree with plaintiffs that the contract cannot override the provisions of the Public Records Act, and the confidentiality provision was not a ground for denying plaintiffs access to the records. See *Mills v. Doyle*, 407 So. 2d 348, 350 (Fla. Dist. Ct. App. 1981) (allowing teachers' collective bargaining agreement to control whether grievance records are public "would sound the death knell of

---

[5] Defendants also argue that the documents are covered by executive privilege, as set forth in *Killington, Ltd. v. Lash*, 153 Vt. 628, 572 A.2d 1368 (1990), and thus are exempt from disclosure under 1 V.S.A. § 317(b)(4). Executive privilege, as explained in *Killington*, is limited to communications with the Governor of Vermont. 153 Vt. at 635, 572 A.2d at 1373. We do not see how it can be extended to a school board grievance decision and associated documents. We reject any claim of executive privilege.

the [Public Records] Act"); *Hechler v. Casey*, 333 S.E.2d 799, 809 (W. Va. 1985).

The trial court ruled that grievance documents are exempt from disclosure if "they relate to the individual grievant or other employees of the Defendant Board" or if they are "in any files maintained by the Defendant Board to hire, evaluate, promote, or discipline any employees." It apparently based this ruling on the conclusion that documents in these categories are "personal documents" under § 317(b)(7). We find this interpretation of the exception to be overbroad and inconsistent with the liberal construction we must accord to the Public Records Act overall.

As part of its conclusion, the trial court ruled that any "information in any files maintained to . . . discipline any employee" is confidential. Although this is a possible reading of the provision, we believe that the wording, specifically the use of "including," is more consistent with a view that information in such files is excepted from disclosure only if it is in "personal documents." This interpretation also evaluates documents based on their content rather than where they are filed. Other courts interpreting similar exceptions have shown reluctance to allow agencies to avoid disclosure by the simple act of placing a document in a personnel or similar file. See *Braun v. City of Taft*, 154 Cal. App. 3d 332, 341–43, 201 Cal. Rptr. 654, 658–59 (Ct. App. 1984) (statute does not create all or nothing policy for records in personnel files); *Denver Publishing Co. v. University of Colorado*, 812 P.2d 682, 684–85 (Colo. Ct. App. 1990) (records in personnel files which did not implicate a privacy right or which contained information routinely disclosed to others not covered by exemption); *CBS, Inc. v. Partee*, 556 N.E.2d 648, 651 (Ill. Ct. App. 1990) (to allow information to be exempt from disclosure "simply because it is in a personnel file would permit a subversion of the broad purposes of the Act"); *Globe Newspaper Co. v. Boston Retirement Board*, 446 N.E.2d 1051, 1056 (Mass. 1983) (only personal information found in personnel files covered by the exemption); *The Rake v. Gorodetsky*, 452 A.2d 1144, 1147 (R.I. 1982) (nonconfidential information is not exempt from disclosure simply because it is stored in personnel files). We conclude that subsection (7) should be read as authorizing

nondisclosure of only "personal documents," wherever such documents are filed.

We emphasize that we would reach a similar result in this case even if we adopted the trial court's interpretation of the statute. We held in *Finberg v. Murnane* that the agency has the burden of showing that a record fits within an exception, and it must discharge this burden by a specific factual showing, not merely by conclusory claims. *Finberg*, 159 Vt. at 438, 623 A.2d at 983. For purposes of summary judgment, we treated the agency's failure to make the specific showing as a concession that the showing could not be made. *Id.* In this case, we have no evidence of where the grievance documents are filed. For state employees, grievance decisions are records of the Vermont Labor Relations Board and are public. 3 V.S.A. § 929. As in *Finberg*, the defendants have relied solely on conclusory claims in a memorandum of law and failed to make a factual record. They have not met their burden.

The term "personal documents" is vague. In its broadest sense, it includes any document about specific people, including most opinions of this Court. See *Margolis v. Director, Department of Revenue*, 536 N.E.2d 827, 829 (Ill. Ct. App. 1989) (personal information means information that can be identified as applying to a particular individual). Because such a use of the term would consume the disclosure rule, most statutes, following the federal model, limit the exemption to instances where disclosure would constitute an invasion of personal privacy. See *Department of Air Force v. Rose*, 425 U.S. 352, 370–82 (1976) (interpreting Exemption 6 of the Freedom of Information Act, 5 U.S.C. § 552(b)(6)); *Mans v. Lebanon School Board*, 290 A.2d 866, 868 (N.H. 1972) (personnel files exemption limited to instances where disclosure would constitute invasion of privacy). Under these statutes, the courts often require a balancing of the public interest in disclosure against the harm to the individual. See *Department of Air Force v. Rose*, 425 U.S. at 380. But see *Chairman, Criminal Justice Commission v. Freedom of Information Commission*, 585 A.2d 96, 100 (Conn. 1991) (no balancing test under Connecticut statute).

The Vermont statute does not explicitly adopt a privacy proviso in the exemption language. The Legislature's statement of policy, however, provides that it must balance the right of per-

sons "to privacy in their personal . . . pursuits" against the need for "specific information . . . to review the action of a governmental officer." 1 V.S.A. § 315. A broad reading of the term "personal documents" makes the right of privacy for personal information absolute.

■ Because our primary goal in interpreting a statute is to implement the intent of the Legislature, *Martel v. Stafford*, 157 Vt. 604, 608, 603 A.2d 345, 347 (1991), we must construe the term "personal documents" in a limited sense to apply only when the privacy of the individual is involved. Thus, it covers personal documents only if they reveal "intimate details of a person's life, including any information that might subject the person to embarrassment, harassment, disgrace, or loss of employment or friends." *Young v. Rice*, 826 S.W.2d 252, 255 (Ark. 1992); see also *Kotulski v. Mt. Hood Community College*, 660 P.2d 1083, 1086 (Or. Ct. App. 1983) (information is personal if it normally would not be shared with strangers). Consistent with legislative intent, we must also examine the public interest in disclosure.

Defendants had the burden to show that the documents plaintiffs requested fit within the exemption. 1 V.S.A. § 319(a). They failed to demonstrate that the documents were "personal" under the definition we have adopted. Accordingly, it was error to grant them summary judgment and to fail to grant summary judgment for plaintiffs.

Both in the trial court and in this Court, plaintiffs sought an order requiring defendants to turn over the contested documents for in camera inspection under 1 V.S.A. § 319(a). Because they requested that relief, we will not go further. On remand, the trial court shall examine the disputed documents to determine whether any are exempt under § 317(b)(7) as we have interpreted it.

*Reversed and remanded for proceedings not inconsistent with this opinion.*