**Springfield Terminal Railway Company v. Agency of Transportation, and Green Mountain Railroad Corp., Vermont Railway, Inc., Northern Vermont Railroad Company, Intervenors**

[816 A.2d 448]

No. 01-447

Present: **Amestoy, C.J., Morse, Johnson and Skoglund, JJ.**

Opinion Filed November 1, 2002

342

*Christopher D. Roy* of *Downs Rachlin Martin PLLC*, Burlington, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, and *Thomas R. Viall*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

*Mark D. Oettinger* of *Lisman, Webster, Kirkpatrick & Leckerling*, Burlington, for Intervenor-Appellee Northern Vermont Railroad Company.

*Eric R. Benson*, Burlington, for Intervenors-Appellees Green Mountain Railroad Corporation and Vermont Railway, Inc.

**Skoglund, J.** Plaintiff Springfield Terminal Railway Company ("STR") appeals from the superior court's grant of summary judgment in favor of defendant Vermont Agency of Transportation ("VTrans"). STR argues that the superior court improperly granted summary judgment by incorrectly interpreting 1 V.S.A. § 317(c)(9)[1] to exempt from mandated public disclosure under Vermont's Access to Public Records Act specific financial information submitted to VTrans in response to requests for proposals to provide rail freight service in the state. We find that § 317(c)(9) exempts from public disclosure the financial information

---

[1] All parties to this appeal and the superior court incorrectly refer to § 317(b)(9). 1 V.S.A. § 317 was amended in 1996 to include subsection (c), which clarified that the enumerated exceptions to the Vermont Access to Public Records Act were exempt from public inspection and copying. See 1 V.S.A. § 317 (1995 & Supp. 2002); see also 1995, No. 159 (Adj. Sess.), § 2 ("(c) The following public records are exempt from public inspection and copying"). Pursuant to this amendment § 317(b)(9) became § 317(c)(9). However, the operative language of § 317, subsection (9) was not amended. Therefore, this citation error does not affect our analysis.

submitted to VTrans and, therefore, affirm the superior court's grant of summary judgment.

In February 2000, VTrans issued a request for proposals, seeking a rail freight operator to provide freight service over a railroad line running from White River Junction to Wells River. The proposal request specifically required that each bidding operator submit detailed information regarding corporate finances, in addition to a general technical proposal. In response to VTrans's request, intervenors Northern Vermont Railroad Company, Green Mountain Railroad Corporation, and Vermont Railway (collectively the "intervenors") submitted proposals containing the required financial information. STR also submitted a proposal, but omitted the required financial information, stating that it did not "believe that the State of Vermont or the Agency of Transportation has the expertise necessary to accurately assess the requested information, nor does [STR] believe that its financial ability to operate this line should be open to question." STR instead proposed to post a bond to ensure its ability to meet its operating and maintenance obligations to the line.

STR's proposal was initially deemed nonresponsive and rejected by VTrans. STR appealed the rejection of its proposal to the Secretary of Transportation, who reversed the initial decision and allowed STR's proposal to be considered by VTrans's selection committee. The selection committee ultimately chose a proposal submitted by intervenor Northern Vermont Railroad Company ("NVR"). The Secretary of Transportation ratified the selection, and the parties then negotiated a long-term operating agreement.

Prior to the selection of NVR's proposal, STR submitted by letter dated March 16, 2000, a request to inspect and/or copy public records relating to the selection, solicitation, and recruitment of entities to operate the rail line. On April 6, 2000, VTrans responded by producing some of the requested documents, but withheld from disclosure other documents, claiming them as exempt from Vermont's Access to Public Records Act pursuant to 1 V.S.A. § 317. VTrans wrote:

> Generally speaking, we consider copies of the proposals submitted to the Agency by potential operators in response to the [request for proposals] notice to be confidential under 1 V.S.A. § 317(b)(15) (exemption from records relating to negotiation of contracts) until such time as the Secretary of Transportation has confirmed the selection committee's recommendation in favor of a particular operator. Furthermore, we consider financial information submitted by potential

operators to be confidential on an ongoing basis under 1 V.S.A. §§ 317(b)(6) (exemption for financial information submitted in connection with agency business), 317(b)(7) (exemption for information relating to finances of an individual or a private corporation), and 317(b)(9) (exemption for proprietary information known only to certain individuals within a commercial concern).

Most relevant to this appeal is VTrans's refusal to disclose specific financial information submitted by the intervenors. This withheld financial information included balance sheets, income statements, profit and loss statements, statements of retained earnings, statements of cash flows, and five or six year freight and passenger flow projections. At the request of intervenor Green Mountain Railroad Corporation, VTrans also withheld information including the names of current and potential shippers, stockholder information, and employee information.

On May 17, 2000, STR again requested access to the intervenors' proposals. On May 26, 2000, VTrans denied STR's request, again maintaining the information as exempt from disclosure. STR responded by filing for an injunction in superior court on July 8, 2000, seeking an order requiring VTrans to produce the withheld documents pursuant to 1 V.S.A. §§ 315-320, Vermont's Access to Public Records statutes. On July 24, 2000, a hearing was held to address several issues, including previously filed motions to intervene. At this hearing, STR's attorney admitted that STR sought disclosure of the financial information submitted to VTrans because it desired the "business and other information" of its competitors and that they were "being nosey."

In October 2000, VTrans and the intervenors filed motions for summary judgment. STR responded by filing a cross-motion for summary judgment on November 15, 2000. The superior court issued an order on January 31, 2001 dismissing STR's complaint and finding that the financial information sought by STR was exempt from disclosure pursuant to 1 V.S.A. § 317(c)(9). STR filed a motion for reconsideration on March 7, 2001, arguing that the intervenors' voluntary submission of the financial information to VTrans constituted a waiver of confidentiality. The superior court denied reconsideration on August 24, 2001. This appeal followed.

Our review of summary judgment is de novo. This Court uses the same standard as the trial court. We will affirm summary judgment "if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Granger v. Town of Woodford*, 167 Vt. 610, 611, 708 A.2d 1345, 1346 (1998) (mem.); V.R.C.P. 56(c).

The relevant issue in this appeal is whether the financial information provided to VTrans by the intervenors and ultimately sought by STR is exempt from public disclosure under Vermont's Access to Public Records Act. See 1 V.S.A. §§ 315-320. We have an established method for analyzing appeals arising under the Public Records Act. See *Trombley v. Bellows Falls Union High School,* 160 Vt. 101, 106-07, 624 A.2d 857, 861 (1993) (stressing that the Court's approach to the Public Records Act is similar to that for open meeting law cases). The Public Records Act represents and exhibits a strong policy favoring access to public documents and records. *Id.* Exceptions to that general policy of disclosure are listed in 1 V.S.A. § 317(c). We construe these exceptions strictly against the custodians of records and resolve any doubts in favor of disclosure. *Id.* (citing *Caledonian-Record Publishing Co. v. Walton,* 154 Vt. 15, 20, 573 A.2d 296, 299 (1990)). The burden of showing that a record falls within an exception is on the agency seeking to avoid disclosure. *Finberg v. Murnane,* 159 Vt. 431, 434, 623 A.2d 979, 981 (1992). The agency meets that burden by making a specific factual showing and not merely by averring conclusory claims. *Id.* at 438, 623 A.2d at 983.

Unless an exception pursuant to § 317(c) applies, STR is entitled to access the records that it seeks; the financial information submitted to VTrans with the intervenors' proposals qualifies as a public record potentially subject to disclosure. See 1 V.S.A. §§ 315, 317(b) (establishing that "certain public records shall be made available" and defining a public record as "all papers . . . or any other written or recorded matters . . . produced or acquired in the course of agency business"). To avoid disclosure of the submitted financial documents, VTrans relied upon § 317(c)(9), which exempts from public inspection and copying:

> trade secrets, including, but not limited to, any formulae, plan, pattern, process, tool, mechanism, compound, procedure, production data, or compilation of information which is not patented, which is known only to certain individuals within a commercial concern, and which gives its user or owner an opportunity to obtain business advantage over competitors who do not know it or use it.

1 V.S.A. § 317(c)(9). The superior court concluded that the financial information sought by STR qualified as a "compilation of information" included within the § 317(c)(9) statutory exemption. On appeal, STR argues that the statutory language of § 317(c)(9) exempting "trade secrets" from public disclosure does not encompass the submitted financial information to which STR seeks access under the Public Records

Act. To support its argument, STR suggests that the financial information submitted to VTrans by the intervenors does not qualify as a trade secret within the scope of § 317(c)(9) because: (1) the submitted financial information is not proprietary in the nature of intellectual property; (2) the Legislature did not expressly include "financial information or bid documents" in the language of the statute; and (3) the financial information was voluntarily disclosed by the intervenors to VTrans. We disagree.

To resolve this appeal, we must, for the first time, construe the statutory language of § 317(c)(9). Our primary objective in construing a statute is to effectuate the intent of the Legislature. *Okemo Mtn., Inc. v. Town of Ludlow*, 171 Vt. 201, 210, 762 A.2d 1219, 1227 (2000). In order to determine the Legislature's intent — the first step in our analysis — we initially look to the language of the statute itself. *Town of Hinesburg v. Dunkling*, 167 Vt. 514, 525, 711 A.2d 1163, 1169 (1998). The Legislature is presumed to have intended the plain, ordinary meaning of the adopted statutory language. *Id.* If the statute is unambiguous and the words have plain meaning, we accept that plain meaning as the intent of the Legislature and our inquiry proceeds no further. *Town of Killington v. State*, 172 Vt. 182, 188, 776 A.2d 395, 400 (2001).

The plain meaning of the statutory language in § 317(c)(9) is clear, and accordingly, no further interpretation is required to determine the intent of the Legislature. For the purposes of § 317(c)(9), the Legislature chose to include within the rubric of exempted trade secrets any "compilation of information which is not patented, which is known only to certain individuals within a commercial concern, and which gives its user or owner an opportunity to obtain business advantage over competitors who do not know it or use it." 1 V.S.A. § 317(c)(9). It is apparent from this language that the Legislature did not intend to limit, as STR contends, this statutory definition of trade secrets to proprietary information in the nature of intellectual property. Instead, the Legislature chose to broaden the scope of exempted documents by expressly defining trade secrets as *"including,* but not limited to" specific compilations of information. *Id.* (emphasis added). While we must strictly construe exceptions to the Public Records Act, the statutory language of § 317(c)(9) including "compilations of information" within the rubric of trade secrets compels this interpretation of the statute.[2] See *Trombley*, 160 Vt. at 106-07, 624

---

[2] Adhering to our mandate to strictly construe exceptions to Vermont's Access to Public Records Act, we decline appellees' urging to construe § 317(c)(9) in pari materia with the Vermont Trade Secrets Act, 9 V.S.A. §§ 4601-4609. See *Finberg v. Murnane*, 159 Vt. 431, 436,

A.2d at 862. Therefore, the inclusive language of the statute is dispositive, and we will not interpret the language defining "trade secrets" in a more limited sense. See *In re Handy*, 171 Vt. 336, 341, 764 A.2d 1226, 1233 (2000) (refusing to read statutory language in a more limited sense than its plain meaning).

■ From this unambiguous language, we must presume that § 317(c)(9) reflects a legislative desire to protect from public access some nontechnical, competitively useful business information. See *Town of Hinesburg*, 167 Vt. at 525, 711 A.2d at 1169 (holding that we can presume legislative intent from the plain meaning of statutory language). Therefore, STR's contention that the term "trade secrets" is limited to proprietary information in the nature of intellectual property fails as it ignores the plain statutory language and legislative intent of § 317(c)(9). Accordingly, STR's claim that the Legislature would have specifically stated "financial information or bid documents" had it desired to exempt that information from disclosure also fails. We hold instead that internal, corporate financial information can be exempt from disclosure under the Public Records Act if that financial information qualifies as a "compilation of information" as defined in § 317(c)(9).

■ Recognizing that § 317(c)(9) can exempt financial information from public disclosure, the relevant question is whether the financial information sought by STR qualifies for protection as a "compilation of information." To qualify under this statutory language, the information must not be patented, must be known only to those individuals within a commercial concern, and must give the user or owner an opportunity to obtain a business advantage over competitors who do not know or use that information. 1 V.S.A. § 317(c)(9). VTrans must demonstrate that the financial information sought by STR fits within the § 317(c)(9) exemption. 1 V.S.A. § 319(a); *Trombley*, 160 Vt. at 110, 624 A.2d at 863. To satisfy its burden, VTrans prepared an itemized confidentiality log for the superior court. The confidentiality log described the data contained in the records submitted by the intervenors and sought by STR, including balance sheets, cash flow statements, revenue histories, assets and liabilities, retained earnings, names of shippers, stockholder information, letters of reference from shippers, staff and supervision information, potential shippers, target commodities, and plans for the proposed freight service. VTrans also characterized the intervenors as closely-held corporations, which STR did not dispute. The superior court concluded that this data is

---

623 A.2d 979, 983 (1992) (refusing to construe the Public Records Act exception in pari materia to avoid undermining the strong policy in favor of disclosure).

generally private corporate information that gives its possessor a commercial advantage over others, thus making the financial information exempt from disclosure under § 317(c)(9). We agree with the superior court.

The financial information detailed in VTrans's confidentiality log provides the intervenors with an opportunity to obtain a business advantage over their competitors who do not have knowledge of or access to that information. See 1 V.S.A. § 317(c)(9). This sensitive, internal economic data of closely-held corporations might be used to affect decisions regarding individual operational capabilities, as well as to determine the content of proposals and bids for the services of the intervenors, such as the rail freight service proposed to VTrans. Disclosure of this financial information would give STR a detailed account of that sensitive data and vitiate the competitive advantage held by the intervenors. See *Enterprise Leasing Co. v. Ehmke*, 3 P.3d 1064, 1070 (Ariz. Ct. App. 1999) (recognizing that internal financial information provides economic value for its possessor and would allow a competitor to gain an advantage if that information were made available). STR's admission that it sought the financial information for the purpose of gaining a commercial advantage over the intervenors emphasizes the economic value of this internal financial data. While motive is irrelevant to the right of access under the Public Records Act, *Finberg*, 159 Vt. at 437, 623 A.2d at 983, STR's motive for seeking the information is instructive in determining that the financial information to which it sought access is the kind entitled to protection pursuant to the statutory exception.

Moreover, adopting STR's interpretation of § 317(c)(9) has unreasonable consequences. This Court will always avoid a statutory construction which leads to absurd or irrational results. *Heisse v. State*, 143 Vt. 87, 90, 460 A.2d 444, 446 (1983). The financial information sought by STR in this case was submitted to VTrans in response to a request for proposals. VTrans required that those submitting proposals provide certain sensitive financial information to allow for effective evaluation of those proposals. Interpreting § 317(c)(9) in a manner that does not protect from disclosure submitted financial information that qualifies as a compilation of information would significantly hamper VTrans's ability to conduct a comprehensive bid process. "It is a matter of common sense that the disclosure of information the Government has secured from voluntary sources on a confidential basis will both jeopardize its continuing ability to secure such data on a cooperative basis and injure the provider's interest in preventing its unauthorized release." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (D.C.

Cir. 1992) (construing the Freedom of Information Act). If we construed § 317(c)(9) as urged by STR, contractors and service providers may decline to cooperate with the state, thus impairing the state's ability to make intelligent, well-informed decisions. See *id.* at 877.

STR also argues that the intervenors waived any trade secret protection of the financial documents under § 317(c)(9) by voluntarily submitting them to VTrans. STR contends that it failed to submit its own sensitive financial information to VTrans because its reading of the Public Records Act gave them "little comfort that its internal, financial information would remain confidential once submitted" to VTrans. STR's stated concern highlights the irrational results of construing § 317(c)(9) in the manner it suggests. Since we will not interpret a statute in a manner that leads to irrational results, we will not interpret § 317(c)(9) in a manner that causes potential contractors and service providers to withhold information essential to the state in its selection process of competitive bids. Financial information that is voluntarily submitted to VTrans in response to a request for proposals can be exempt from public disclosure if it qualifies as a trade secret as defined in § 317(c)(9). Therefore, voluntary submission of financial information qualifying for protection under § 317(c)(9) does not waive that protection.

Finally, STR argues that no other exceptions to the Public Records Act set forth in 1 V.S.A. § 317 exempt the submitted financial information from public access. Since the records are exempt from disclosure under § 317(c)(9) and the superior court did not address other potential exemptions, we decline to address that argument. For these reasons, we find that there are no genuine issues of material fact and that VTrans is entitled to judgment as a matter of law.

*Affirmed.*