Kemper and Schuster v. Forbes et al., No. 356-8-05 Wmcv (Wesley, J., Sept. 21, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                              WINDHAM  SUPERIOR COURT
WINDHAM COUNTY, SS.                           DOCKET NO. 356-8-05 Wmcv


HUGH KEMPER &                    )
SCOTT SCHUSTER                   )
   VS.                          )
                                )
ROBERT B. FORBES,               )
CLYDE R. PROPUTY, JAMES A AMEDEN,
CLAIRE C. TRASK & ROBERT S. COWLES,
in their official capacities as members of the
TOWN OF LONDONDERRY SELECTBOARD


## ORDER DENYING DECLARATORY OR INJUNCTIVE RELIEF

     The above-captioned matter came on for hearing on September 8, 2005, pursuant to the provisions for docket advancement in 1 V.S.A.§§314(b) & 319(b), to consider Plaintiffs' claims for relief under Vermont's Open Meeting and Access to Public Records statutes.  Plaintiffs were represented by Stephen L. Saltonstall, Esq.  Defendants were represented by Jon Anderson, Esq. Concluding that Plaintiffs lack standing as aggrieved parties, and that in any event the Selectboard justified its executive session, the Court denies any relief based on an alleged violation of the open meeting law.  Similarly, based on Plaintiffs' failure to demonstrate that either of them was denied access to a public record by any Defendant, or that Defendants acted intentionally to frustrate the public records statutes, their claim for declaratory and injunctive relief under those laws is also denied.

**Findings of Fact**

     1.  Plaintiffs are residents and registered voters of Londonderry.  They have become deeply concerned with a proposal by Catamount Energy, Inc. to construct a wind turbine farm for

the production of electric energy on the Glebe Mountain ridgeline. They have participated in a number of public forums aimed at influencing the Selectboard to oppose Catamount's petition to the Vermont Public Service Board for a certificate of public good and a permit to authorize the construction of the wind farm.

2. Defendant Selectboard has at various times over approximately the past year given consideration to the position it might take regarding Catamount's proposed energy production project. Pursuant to 30 V.S.A.§248(b)(1), in connection with any petition which might be filed by Catamount, the PSB must give "due consideration" to the "recommendations of the [affected] municipal bodies" in deciding whether to approve it.

3. On June 6, 2005, according to its minutes of a regularly scheduled meeting, Defendant Selectboard took up discussion of "the Town Plan and the promised application to install windmills on Glebe Mountain". The Board resolved "that Bob Cowles and Claire [Trask] wouild construct a wish list Tuesday and get copies to the Board for a special meeting tomorrow at 5:00 P.M. The Board also decided they would have an informational meeting around the 8th of July. Bob Forbes read an informational letter on windmills and the Town Plan."[1]

4. On June 7, 2005, according to its minutes of the specially scheduled meeting, Defendant Selectboard met at 5 P.M. and "approved the Wish List prepared by Bob & Claire for sending to Attorney Anderson." None of the business at this meeting was conducted in executive session.

5. The "wish list" is reflected in Ex. 4., a copy of an e-mail from Bob Cowles to Jon Anderson sent on June 7, setting forth possible negotiating positions to be communicated to Catamount of "items that the Select Board considers essential for the Town of Londonderry. If approved, the Select Board would consider a favorable response to the erection of Wind Turbines on the summit of Glebe Mountain." The subjects under possible discussion would include:

---

[1] Count 2 of the complaint challenges as unlawful an executive session undertaken at the June 6 meeting. The evidence disclosed that this session was unrelated to the Glebe Mountain project, and that no one objected at the time.

- a fund for removing turbines and towers no longer in use to be established by a fee of $.0075 per KW for "the life time of the project;
- additional funding to complete a septic treatment plant;
- no expansion of project beyond contemplated 27 towers;
- noise monitoring to insure compliance with zoning limit of 70 decibels;
- donation by Catamount of compensatory open space at an alternate site;
- continuing input by Londonderry Conservation Commission of planned siting and construction of roads serving the project, as well as other environmental impacts, including visual;
- appointment of "an independent monitor" to oversee construction activities posing a possible threat to watersheds;
- a commitment to site transmission lines underground.

6. According to Robert Forbes, Chair, (the only member of Defendant Selectboard who testified), the Board discussed at the June 7 meeting the prospect of a further meeting to be scheduled for the purpose of addressing the "wish list" with representatives from Catamount. It was suggested that such a meeting would likely be held in executive session at Catamount's request. Such meeting was eventually scheduled for July 5, the text of the warning stating: " The Londonderry Selectboard will meet Tues. July 5, 2005 at 10 a.m. at the Town Offices in <u>executive session</u> with representatives of Catamount, the Planning Commission and lawyers for the Town & Catamount to discuss the possible placement of wind turbines on Glebe Mt."(emphasis in original).

7. Neither Plaintiff was present at the July 5 meeting. Defendant Forbes did not arrive until after the meeting had begun. No evidence was presented as to any motion, discussion or findings with respect to the determination to conduct the meeting in executive session, except the minutes which state:

A motion was made to go into executive session to discuss the possible placement of windmills.
1. Two categories of town regulations
    1. Monetary
    2. Non Monetary

Catamounts lawyer will work on wording for non-monetary points & forward to Jon Anderson for his input.

8. After learning that this action was likely, the Selectboard met in regularly scheduled session on August 30, 2005 and adopted the following amendment to the minutes of the July 5

3

meeting (Ex B):

> The Select Board hereby moves that the minutes of the meeting of July 5, 2005 be modified to reflect that the Select Board went into executive session to consider potential contract negotiations concerning wind towers where premature general public knowledge would clearly place the Town and the other persons involved at a substantial disadvantage and that the Board sought the advice of its attorney on such potential contractual matters and further that the Board went into executive session to discuss documents that are excepted from public assess as provided by Vermont law.  The vote was unanimous.

9.  Catamount has now formally insisted that ongoing discussions as to any potential "host town" agreement be conducted subject to a stipulation as to confidentiality.

10.  At some point after the July 5 meeting, Bruce Balter , a non-party witness and registered voter of Londonderry, made a request of Defendant Robert Cowles for a copy of the "wish list".  Defendant Cowles, who did not testify, denied having access to the document.

11.  On August 19, 2005, Plaintiff Schuster approached the Londonderry Town Clerk seeking a copy of the "wish list" as a public record previously subject to discussion at a meeting of the Selectboard.  Plaintiff Schuster was denied access to the document, being told: i) that the Town Clerk did not believe it was on file or available to the public; and ii) that it pertained to discussion undertaken in executive session, and was therefore exempt from disclosure.  There is no evidence as to whether the Town Clerk made the written certifications required by 1 V.S.A.§318.  The Town Clerk was not named as a defendant in this action, nor subpoenaed to testify.

12. It is a reasonable inference from all the evidence that the Board had not caused the "wish list" to be kept available as a record retrievable by requests directed through the Town Clerk, despite the adoption of the "wish list" as the foundation for further negotiations with Catamount at the open hearing on June 7.  There is no evidence that such failure was undertaken deliberately with the intention of violating the public records statutes.

13.  Prior to the scheduled hearing in this matter, Defendants' counsel supplied Plaintiffs' counsel with a copy of the "wish list".

**Discussion**

**Open Meeting Claim** - Plaintiffs challenge the decision to go into executive session with Catamount's representatives on July 5, and seek a declaratory ruling invalidating the decision to conduct business regarding the Glebe Mountain proposal in executive session, as well as injunctive relief preventing such future discussion undertaken in contravention of the open meeting law. Plaintiffs dispute that an executive session was justified by 1 V.S.A.§313(a)(1) which creates an exception to the open meeting law for discussions of "contracts...where premature public knowledge would clearly place the ...municipality...at a substantial disadvantage." First, Plaintiffs note that any decision to hold an executive session must be supported by a two-thirds vote of those present, 1 V.S.A.§313(a), and that neither the original minutes of the July 5 meeting, nor any testimony by someone present with personal knowledge, demonstrates that the motion carried by the requisite super-majority. More significantly, Plaintiff's point to Trombley v. Bellows Falls Union H.S., 160 Vt. 101, 104-105 (1993) and Blum v. Town of Winhall Selectboard, 172 Vt. 622, 624 (2001) as tainting the executive session because Defendants failed to make any contemporaneous findings to support the conclusion that the contract discussions would place the Town "at a substantial disadvantage." Furthermore, Plaintiffs insist that exceptions to the open meeting and public records laws are to be construed narrowly against those who assert them. Id.; see also, Finberg v. Murnane, 159 Vt. 431, 434 (1992) citing Caledonian-Record Publishing Co. v. Walton, 154 Vt. 15, 20 (1990)(exceptions should be construed strictly against custodians of records and any doubts resolved in favor of disclosure).

Certainly notice of the immanency of this action placed Defendants in a defensive posture as to the Board's procedural compliance with the open meeting law, as represented by the subsequent resolution to modify the minutes of the July 5 meeting in response to the dual prongs of Plaintiffs' challenge. Nevertheless, Plaintiffs offered no evidence to contradict the assertions retroactively placed in the minutes; namely, that the Board had moved to go into executive

session upon a finding that open discussions with Catamount about the "wish list" would place the Town at a substantial disadvantage, and that the vote to do so had been unanimous. The absence of rebuttal on these points alone would have satisfied the Town's burden of proof, but the Court concludes that Plaintiffs' claim primarily founders because their inability to assert personal knowledge contradicting the amendments to the minutes betrays a more fundamental weakness in their claim - lack of standing as an aggrieved party under 1 V.S.A.§314(b).

The open meeting law confers the right to bring a private cause of action for injunctive relief to enforce its terms on any "person aggrieved by a violation of this subchapter". While the Supreme Court has yet to completely address the scope of involvement that will satisfy the "aggrieved" requirement, Plaintiff's pleadings and evidence here appear plainly deficient to establish standing in light of the discussion in Trombley. In that case, the Court overturned the trial court's dismissal of the claim on summary judgment, remanding for further proceedings.[2] As Plaintiffs argue, the holding elaborates upon the need to strictly construe exceptions, and makes passing mention that reliance on the contract exception ought to be accompanied by a finding as to the applicability of the terms of the proviso. Yet, Plaintiff has failed to discuss the Court's skepticism as to whether the plaintiffs in Trombley could have established standing to assert their open meeting count.

> The trial court erred in granting summary judgment to defendant on the open meeting claim. We cannot find, however, that plaintiffs made the requisite showing to obtain relief...The complaint was filed long after the meeting in question, and *there is no allegation that plaintiffs ever raised the issue at the time*

---

[2]The factual background of plaintiffs' claim varies substantially from the circumstances here. The school board conducted grievance proceedings requested under the teachers' collective bargaining agreement, following its condemnation of three teachers for using school letterhead in a public letter protesting athletic cuts. The teachers asked that their grievances be heard in executive session and the board complied. Later, after plaintiffs' request for the documents associated with the grievance proceedings was rejected, they brought suit to compel disclosure, adding a complaint that the original grievance procedure was improperly held in executive session. While the opinion observes that defendants "do not seriously contend" that the provisions of the contract exception could have been satisfied, it strongly suggests that plaintiffs lacked standing to challenge the legitimacy of the executive session. The balance of the opinion, and its primary significance, is devoted to a rejection of the Board's claim that the records of the grievance proceeding were exempt from disclosure as "personal documents" under 1 V.S.A.§317(b)(7).

*of the meeting or that they were even at the meeting.* As shown by the summary judgment papers, plaintiffs' presuit actions were directed at obtaining access to the documents...

We need not define "aggrieved" in order to hold that plaintiffs must make some showing of injury to obtain relief. In the absence of an aggrieved individual, the attorney general may bring suit to enforce the statute...On remand, the trial court must determine whether plaintiffs have the requisite standing to bring their open meeting claim.

Trombley v. Bellows Falls Union H.S., 160 Vt. at 105-106 (footnote and internal citations omitted; emphasis added).

On its face, Plaintiffs' complaint establishes no better claim for injury than did the Trombley complaint, and their evidence at trial did not improve upon the pleading.[3] As with the Trombley plaintiffs, neither Mr. Kemper nor Mr. Schuster was present on July 5, thus neither of them was positioned to object to the motion to go into executive session. Under Trombley, they can't claim injury for being denied participation in a meeting they did not attend.[4]

As set forth above, even assuming Plaintiffs could claim standing, they have not presented any evidence challenging the Board's representation in the revised minutes that the executive session was undertaken following due consideration of the likelihood that public exposure of negotiations with Catamount over the "wish list" would place the Town at a substantial disadvantage. Rather, Plaintiffs maintain that no such rationale could be legally feasible at the present stage of the negotiations. They note that in Blum - a memorandum decision reversing the trial court's dismissal for failing to state a claim - the Court observed:

---

[3] Conceivably, though the Court was obviously skeptical, the Trombley plaintiffs might have established on remand that one or more had actually sought to observe the original grievance session, notwithstanding the failure to plead such thwarted participation. Failing such demonstrated stake in the meeting under challenge, the inescapable conclusion from the Supreme Court's holding is that they had not been injured and thus had not established standing to seek declaratory and injunctive relief.

[4] The Court acknowledges Plaintiff's contention that they were pre-empted from any meaningful participation by the text of the Board's warning advertising in advance the intention to go into executive session. This argument is unavailing. First, neither Plaintiff testified to having seen the warning and being dissuaded by its terms from attending. In any event, after Trombley, attendance and exclusion would appear the *sine qua non* of an aggrieved claimant. See e.g. Blum, supra, in which plaintiff clearly asserted his right to be present but was denied.

"Indeed, it is unclear how access to the negotiation would place the town at a substantial disadvantage since the adversary in the negotiation, Stratton Corporation, is already present." Id. 172 Vt. at 624.

Notwithstanding the Blum *dicta*, it is plain enough in this case how the Town might be disadvantaged even with Catamount present at any open meeting. As yet, it is unclear how strong the Town's negotiating position can be as to the concessions it seeks from Catamount. Although Catamount doubtless covets the Town's support before the Public Service Board, it will be a calculated decision whether pursuit of such support is worth either the cost of the demands on the Town's "wish list", or the prospect of heightened controversy that predictably may accompany a completely public process for every stage of the negotiations necessary to reach a comprehensive agreement, assuming one can be crafted. Catamount has now demanded a confidentiality agreement, and the Selectboard was on notice of Catamount's concern for premature public inclusion in the negotiating process at the time it finalized its "wish list" and was set to embark on preliminary discussions with Catamount's representatives. The Court concludes that it was well within the Board's discretion to decide at that point that further open negotiations presented a risk that the prospect of a favorable agreement might be scuttled from the outset - a risk the Board had discretion to deem not in the Town's best interest, regardless of how devoutly Plaintiffs and their allies might have embraced it. Though a clear statement in the minutes of the Board's reasoning might be seen as advisable, the evidence of the Board's rationale is sufficient in this instance to justify the executive session, even assuming Plaintiffs could demonstrate standing to challenge it despite their absence from the meeting.

**Access to Records Claim** - As with Trombley, the impeteus for the present action stemmed from Plaintiffs' perception that the Town was stonewalling their efforts to examine the "wish list". The Town makes no claim that the "wish list" was exempt from disclosure; indeed, it was disclosed during the course of pre-trial document exchange between counsel, and was admitted as an exhibit at trial. Rather, the Town suggests that the slight delay must be seen as

8

typical of the administrative inefficiencies that are common to the civic operations in small towns. Indeed, though the Town's briefing and argument lends but slight focus to the point, the principal problem with Plaintiffs' access to records claim is again one of standing and injury, as revealed by close examination of their frustrating efforts to find a responsive official. According to the evidence only Plaintiff Schuster made direct inquiry in an attempt to get a copy of the "wish list". However, he made his request to the Town Clerk, who is not named as a defendant and who did not testify. Although the complaint avers at ¶16 that "the defendants have kept the documents of its dealings with Catamount Energy secret and have not filed copies thereof to the Londonderry Town Clerk in violation of 1 V.S.A.§316(a), *et seq.*", Plaintiffs failed to present credible evidence that defendants intentionally acted to keep the "wish list" secret, or to frustrate the purpose of the public records law. The Court accepted as credible the testimony of Mr. Balter that he was told by Defendant Cowles that "he didn't think he could provide" the "wish list". However, Mr. Balter is not a party to this action, and his testimony does not justify the inference sought by Plaintiffs; namely, that Plaintiff Schuster's request of the Town Clerk was unavailing because of the deliberate actions of one or more of the Defendants to keep the "wish list" secret. [5]

Doubtless had one of the Plaintiffs made direct inquiry of any of the members of the Board, a clearer case for injury and grievance might have appeared. Under the circumstances presented by the evidence, neither has established any failure by Defendants, individually or collectively, to comply with the public records laws.

Based on the foregoing, it is hereby **ORDERED**:

Plaintiffs' requests for declaratory and injunctive relief are **DENIED** as unsupported by

---

[5] To the extent that Plaintiffs' may seek to premise their claim on an alleged breach of an affirmative duty on the part of each member of the Selectboard, or one of them in particular, to cause documents to be filed with the Town Clerk, both the factual record and the legal briefing are inadequate to support such an argument. No such affirmative duty appears from the text of the public records law, nor any other statute or case to which Plaintiffs have directed the Court. Nor did Plaintiffs establish the details of any regular practices between the Selectboard and the Londonderry Town Clerk suggestive of a substantial departure from protocol in the present circumstances.

the evidence.

DATED September 20, 2005, at Newfane, Vermont.

_____
John P. Wesley
Presiding Judge