In re: HS-122, No. 195-5-10 Bncv (Wesley, J., Feb. 4, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Bennington Unit** | **Docket No. 195-5-10 Bncv** |

|  |  |
|---|---|
| **IN RE: HS-122** | ) |
| | ) |
| | ) |

## <u>OPINION & ORDER</u>

Petitioner Joseph O'Dea requested a copy of the HS-122 State Payment Report from the Town of Manchester in accordance with Vermont's Access to Public Records Act. This report contains property tax adjustment information based, in part, on the income of individuals in the town. The Town denied Petitioner's request and asserted that the HS-122 report is exempt from disclosure under various provisions of 1 V.S.A. § 317(c). Petitioner appeals this denial. At the hearing on the merits held before the Court on November 15, 2010, without jury, Petitioner, an attorney licensed in Vermont, represented himself. The Town of Manchester was represented by Robert Woolmington, Esq.

As explained below, based on its conclusion that the issue is determined as a matter of law by resort to statutory interpretation, the Court finds in favor of Petitioner, holds that the HS -122 report is a public record not subject to any exemption, and directs the Town to disclose the report to Petitioner in accordance with the Access to Public Records Act.

**Discussion**

Vermont residents are required to pay an education property tax on their homestead. 32 V.S.A. Chap. 135. Residents whose incomes fall below a certain threshold are eligible for a reduction in local property taxes as a partial offset to the

education property tax. 32 V.S.A. Chap. 154.  The Vermont Department of Taxes calculates the appropriate property tax adjustment for every household. 32 V.S.A. § 6066a(a).  The Department transmits this information to each town in an HS-122 report.  The report contains a list of all homesteads in the town which qualify for an offset to their education property taxes, as well as the amounts of the corresponding property tax adjustments.  The property tax adjustment amounts contained in the HS-122 report also correspond to the amounts shown on individual property tax bills.  Any household listed in the HS-122 report has a total income of less than $97,000, the statutory threshold to qualify for an adjustment.

The Town argues that the HS-122 report is exempt from disclosure because, using the property tax adjustments listed in the report, one can accurately extrapolate the household income of virtually every household eligible for an adjustment. See, 1 V.S.A. § 317(c)(6)(exempting tax returns and the information on them from disclosure as a public record).  In support of this claim, David Fielding – the Treasurer of the Town of Manchester and a private tax accountant – testified one can calculate a household's income with a high degree of certainty by reference to the property tax adjustment amounts contained in the HS-122 report.  He presented a spreadsheet of calculations, made using property tax adjustments from the HS-122 report, by which he was able to determine the income of nine households to within fifteen dollars.  Mr. Fielding was able to verify his calculations because he had access to the individuals' tax returns in his capacity as a private accountant.

Petitioner argues that, despite Mr. Fielding's analysis derived from a limited sample of Manchester residents, one cannot invariably or confidently determine

household income solely from the information in the HS-122 report. Furthermore, Petitioner contends that the legislative history makes clear that property tax adjustment amounts must be deemed public information. In response to the Town's position, Petitioner further argues that the adjustment amounts contained in HS-122 are derivative information not exempt from disclosure under *Finburg v. Munane*, 159 Vt. 431 (1990).

Petitioner called Donald Keelan, C.P.A., who testified that one could not reliably determine the income of a household knowing only the property tax adjustment amount found in the HS-122 report. He explained that any calculation would be imprecise because the property tax adjustment amounts contained in the HS-122 report are a function of several factors, and not derived solely from the particular household's income. He explained that an attempt to extrapolate from the adjustment reported in the HS -122 report to derive the income at a particular household could be skewed by various circumstances, such as when an individual opts to have a refund carried over to pay future tax bills, or when some portion of the credit is subject to tax offset to satisfy outstanding liens or statutory obligations.

The stipulated record includes an excerpt from a House Committee Report indicating that the Legislature specifically considered and addressed the concerns raised by the Town. House Legislative Study Committee on Income-Based Education Property Tax for Vermonters, p. 15 (December 15, 2005) ("House Report"). The House Report addresses the possibility that education income sensitivity adjustments sent by the Tax Department to the towns might "provide enough information for town officials to estimate the taxpayer's amount of household income." *Id.* The Committee considered several solutions to this potential confidentiality problem including (1) recommending

- 3 -

that property tax bills which contain property tax adjustments be exempted as nonpublic documents, or (2) adding components to the property tax adjustment not disclosed in the transmission to the towns which would limit the ability of third parties to compute household income.

The Committee ultimately recommended making the property tax adjustment an amalgam of different possible inputs, reasoning that officials and others "would have no idea which components (prebate, rebate, refund, withholding) make up the amount the Tax Department reports for that taxpayer." *Id.* Considering the bill as enacted, it is apparent that the Legislature accepted the Committee's recommendation, since the act did not declare tax bills which include a property tax adjustment amount to be "nonpublic", nor otherwise amend the exceptions specified in the Access to Public Records Act, 1 V.S.A. § 317(c), to include the information reported in HS-122 reports.

Petitioner also submitted into evidence an opinion letter from the Chief Assistant Attorney General dated October 12, 2007. The Attorney General concludes that property tax adjustment information located on property tax bills is public information and not exempt from disclosure under 1 V.S.A. § 317(c). Since the HS-122 report is a compilation of these property tax adjustments for each town, the Attorney General's reasoning applies to HS-122 reports as well.[1]

---

[1] Curiously, in light of this opinion, the Town placed in evidence its request made to the State Department of Taxes for the HS-122 report for the town of Dorset. In response, the Tax Department stated "[since] the information you seek is on property tax bills available at the Dorset Town Clerk's office, your request is denied." Given the Attorney General's opinion, as well as the legislative history, there is plainly some irony in the Tax Department's refusal to disclose the HS-122 information, deferring instead to its presumed availability through the towns. After all, if the information is public it ought to be available from the state agency from which it emanates originally. Yet, the Department is not a party to this suit, and this titillating bit of buck-passing by the Department is not particularly relevant to the duty of the Town once it receives a request for public information.

The Public Records Act represents a strong policy favoring access to public documents and records. *Trombley v. Bellows Falls Union High Sch.*, 160 Vt. 101, 106-07 (1993). Exceptions to that general policy of disclosure are listed in 1 V.S.A. § 317(c). These exceptions are strictly construed against the custodians of records and any doubts must be resolved in favor of disclosure. *Id.* at 107. The burden of showing that a record falls within an exception is on the agency seeking to avoid disclosure. *Finberg v. Murnane*, 159 Vt. 431, 434 (1992). The agency meets that burden by making a specific factual showing and not merely by averring conclusory claims. *Id.* at 438.

The Town of Manchester is a public agency subject to the disclosure requirements of the Public Records Act, pursuant to 1 V.S.A. § 317(a), and the records sought are "produced or acquired" in the course of municipal business. 1 V.S.A. § 317(b). Therefore, Petitioner is entitled to the records requested unless an exemption to the Access to Public Records Act applies.

1 V.S.A. § 317(c)(6) exempts from disclosure "a tax return and related documents, correspondence and certain types of substantiating forms which *include the same type of information as in the tax return itself* filed with or maintained by the Vermont department of taxes or submitted by a person to any public agency in connection with agency business." (emphasis added). "Return information" is defined in the tax code as including the "…amount of a person's income, payments, receipts, deductions, exemptions, credits." 32 V.S.A. § 3102(b)(2).

The Vermont Supreme Court considered this exception in *Fineburg v. Murnane*, 157 Vt. 431 (1990). By its ruling in that case, the Court explained that the exemption

On the other hand, the fact in evidence that Petitioner was able to secure HS-122 reports by direct request of town officials in neighboring Dorset and Danby also counts little in the Court's analysis, which proceeds as a matter of law from its interpretation of legislative intent.

does not cover "derivative documents" which are "made up by the agency from tax returns, related documents or correspondence." *Id*. at 435. The Court noted, however, that that "to some extent such derivative documents must be covered to avoid disclosure of information taken from the return and related documents." *Id.*

The Town asserts four separate exemptions to the Access to Public Records Act which it believes compels withholding the HS-122 report. Their principal argument rests on the exemption under Sec. 317(c)(6) for information contained in tax returns, as well as the belief that the HS-122 report represents the type of "derivative document" which is so intrinsically related to information taken from the return that it must come under the exemption, as suggested by *Fineburg v. Murnane.* Each aspect of the Town's argument, however, is based on the premise that one can accurately calculate a household's income –thus, "the same type of information as in the tax return itself" - using the property tax adjustments found in the HS-122 report.

The parties and their experts dispute the degree of accuracy to which one can estimate household income using the property tax adjustment amounts found in the HS-122 report. Consideration of Mr. Fielding's testimony, augmented by common sense, strongly suggests that in the substantial majority of instances there will be a straightforward mathematical relationship between any reported adjustment on the HS-122 report and the income of the household entitled to that adjustment. This is because the "other factors" which might affect the adjustments reported in the HS-122 report rarely come into play as to most property tax adjustments.

Nevertheless, the Legislature was not ignorant as to this concern or its potential consequences. House Report at 15. Relying on the efforts of the House Legislative Study

Committee on Income-Based Education Property Tax for Vermonters, the final bill rejected any direct protection of tax return information which might be derived from the HS -122 reports. Rather, the bill adopted the Committee's recommendation that the process be subject to certain other inputs, including non-public factors such as liens, offsets and applying credits forward, which when applicable would somewhat complicate the otherwise simple formulaic relationship between an adjustment and the income of the household eligible to receive it. As noted, the Court concludes that the Committee's recommendations produced a camouflage that is virtually transparent in the few cases where other factors are present, and non-existent in the vast majority of cases where the adjustment is solely a function of income. However, the Court also infers that the Legislature doubtless understood that to be the case, and elected against any explicit protection for the information generated by the process it was creating.[2]

While the Town questions the effectiveness of the Legislature's solution to the confidentiality problem, the Court is bound by the clear import of legislative intent that emerges from consideration of the language of the final bill, as informed by the report of the study committee. Whatever its actual effectiveness in affording a disguise to eligible taxpayers against the computation of their household incomes, the bill represents a considered compromise of competing interests, in which explicit confidentiality was rejected. Against this history, the Town's attempt to fit HS-122 information into the exemption protecting tax returns strains the bounds of an exclusion that must be narrowly construed. The doubts raised by the Town must be resolved in favor of disclosure. *Trombley*, 160 Vt. at 107.

---

[2] In reaching this conclusion, the Court finds persuasive the Attorney General's opinion which also concluded that property tax adjustments are public. The opinion letter states that the "legislative history reinforces the language of the statutes and confirms that property tax records are public documents."

Based on the foregoing, it is hereby **ORDERED**:

The Court DECLARES that property tax adjustments are public information and that HS-122 reports are public information. The Town shall produce this information to Petitioner forthwith as required by the Access to Public Records Act.

Dated _____ 2011 at Bennington, Vermont,


                                 _____

John P. Wesley
Presiding Judge