## State of Vermont v. Edwin Allen Towne, Jr.

[453 A.2d 1133]

No. 112-81

Present: Billings, Hill and Peck, JJ., and Daley, J. (Ret.), Specially Assigned

Opinion Filed November 2, 1982

*John A. Rocray,* Windham County State's Attorney, Brattleboro, for Plaintiff-Appellee.

*David G. Reid,* Public Defender, and *Gary Ameden,* Law Clerk (On the Brief), Brattleboro, for Defendant-Appellant.

**Billings, J.** On August 26, 1980, after raising the defense of insanity, the defendant was convicted by a jury in the Windham District Court of the crimes of kidnapping, 13 V.S.A. § 2401, and sexual assault, 13 V.S.A. § 3252(1)(A). The defendant appeals, following the denial of his motion for new trial, V.R.Cr.P. 33.

The defendant makes several claims of error which he asserts require reversal. He first argues that his constitutional rights of due process and confrontation were violated by the admission of a medical opinion of a nontestifying expert on the issue of insanity.

In the course of its prima facie case, the State called an expert witness in forensic psychiatry. His qualifications are not challenged in this appeal. He testified at length about the nature of psycho-sexual disorders and the various means used by psychiatrists to classify some sexual offenders as mentally ill, and others as sexually disturbed but not mentally ill. It was his opinion that the defendant fell into the latter category. The state's attorney continued his direct examination by seeking to clarify the nature of such medical classifications, and in so doing he elicited the following testimony from the doctor:

Probably the best description of these classification is a relatively recent, you've got the book on your desk. It's

by Doctor Rada, who is a professor at Albuquerque, New Mexico, and a personal friend of mine. And as a matter of fact, I consulted with Doctor Rada myself about this case before this particular trial. I came to the conclusion, I read his book some time back, and I just wanted to refresh my memory and get his opinion. Because often it's not a bad idea and a doctor shouldn't be too humble, too proud to recognize that there are other people who know more about the subject than I. And probably of all the people in this United States who knows most about this stuff is that man, Dick Rada. When he was a resident and later at a hospital where I was at last year I was a visiting professor at the University of Southern California last year. And I went to Atascadero and at the hospital there. And this is a center where a great deal of work is being done on dealing with sexual offenders. It's a general psychiatric hospital but they have a section set apart for that. And I would say that Doctor Rada is in concurrence with my opinion in this case.

The defendant made no objection to this testimony, nor did he move to have any portion of it struck from the record. Later, in his closing argument to the jury, the state's attorney referred to the apparent consultation between the State's expert and Doctor Rada, emphasizing the purported concurring opinion:

Finally, one last thought, when you were selected as jurors in this case many of you were asked the question, what do you think about a second opinion. And if you will recall [the doctor's] testimony he went to the man who wrote the book so to speak, Richard Rada, and asked him about his opinion and came back reinforced with what he concluded was a correct medical diagnosis. Thank you.

Again, the State's argument was made without objection by the defendant.

■■ The defendant now contends that the above-quoted portions of the doctor's testimony and the State's closing argument constitute impermissible hearsay, the admission of which violated his confrontation rights under the federal and

Vermont constitutions. However, in advancing this claim the defendant faces an initial hurdle, for no objection was made to the disputed evidence, "and this Court will not consider on appeal a claim of error not objected to below unless so grave and serious that it 'strikes at the very heart of [defendant's] constitutional rights.'" *State* v. *Smith*, 140 Vt. 247, 257, 437 A.2d 1093, 1098 (1981) (quoting *State* v. *Blaine*, 133 Vt. 345, 349, 341 A.2d 16, 19 (1975)); *State* v. *Morrill*, 127 Vt. 506, 511, 253 A.2d 142, 145 (1969). Although the defendant belatedly presented this issue for the trial court's consideration in his motion for new trial, "[w]ithout an objection or a motion to strike, the claims made in the motion for new trial are waived for the purposes of appellate review . . . unless they are glaring errors." *State* v. *Mecier*, 138 Vt. 149, 157, 412 A.2d 291, 296 (1980); *State* v. *Kasper*, 137 Vt. 184, 190, 404 A.2d 85, 97 (1979); *State* v. *Morrill, supra,* 127 Vt. at 511, 253 A.2d at 145; V.R.Cr.P. 52(b).

It is clear from the record, however, that this is "one of those rare and extraordinary cases" of error reaching constitutional dimension, *State* v. *Morrill, supra,* 127 Vt. at 511, 253 A.2d at 145, for at issue is the denial of a criminal defendant's most fundamental of rights: the right to confront all witnesses testifying against him. *California* v. *Green,* 399 U.S. 149, 158 (1970); *State* v. *Berard,* 132 Vt. 138, 146, 315 A.2d 501, 507, *cert. denied,* 417 U.S. 950 (1974). Moreover, the jury in this case was exposed not only to the improper testimony, but to its emphatic repetition during the prosecutor's closing argument. As such, the defendant's failure properly to raise the issue below does not preclude our review of it here. *State* v. *Camley,* 140 Vt. 483, 490, 438 A.2d 1131, 1135 (1981). In fact, we are compelled to do so, for fundamental errors, left unredressed, work seriously to undermine the credibility and integrity of the judicial process. *State* v. *Kasper, supra,* 137 Vt. at 191, 404 A.2d at 89.

Turning to an analysis of the disputed evidence, we note at the outset that the doctor's testimony is clearly hearsay in nature. In effect, the State's expert testified that he and Doctor Rada, a witness never brought before the court, had a telephone conversation concerning the defendant, and

based on that conversation it was Doctor Rada's opinion that the defendant was not insane. Thus, the jury heard testimony of an out-of-court statement "offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." McCormick, Evidence § 246, at 584 (2d ed. 1972). See *In re P. F.*, 133 Vt. 64, 67, 329 A.2d 632, 635 (1974) ; *West-Nesbitt, Inc. v. Randall*, 126 Vt. 481, 484–85, 236 A.2d 676, 679 (1967).

■■■ This testimony falls outside of any recognized exception to the hearsay rule. It was apparently offered "to buttress and support" the State's expert's opinion. However, "we have clearly held that corroboration of an expert witness, upon examination-in-chief, is not permissible. *Baldwin* v. *Gaines*, 92 Vt. 61, 64–65, 102 A. 338, 340 (1917). Its use is permitted only to impeach a witness who has testified, on direct, to his reliance upon it." *Cadel* v. *Sherburne Corp.*, 139 Vt. 134, 136, 425 A.2d 546, 547 (1980). Nor does this evidence come within the exception allowing an expert to base his opinion upon facts or data not admissible in evidence, but reasonably relied on by experts in the field. 12 V.S.A. § 1643; *Lambert* v. *Fuller*, 131 Vt. 181, 184, 303 A.2d 471, 473–74 (1973). The expert was not relying on facts or data provided by Doctor Rada, but was rather "acting ·as a conduit" for the other doctor's opinion. *Dupona* v. *Benny*, 130 Vt. 281, 287, 291 A.2d 404, 408 (1972). Thus, "the question here is not what data an expert may rely upon, but what data he may put into evidence." *Cadel* v. *Sherburne Corp., supra*, 139 Vt. at 136, 425 A.2d at 547. That the doctor gave his own expert opinion as well as relaying that of another does not alter this analysis: one expert may not put in evidence the opinion of a nontestifying expert without running afoul of the hearsay rule. *Id.* at 136, 425 A.2d at 547. See also *O'Kelly* v. *State*, 94 N.M. 74, 607 P.2d 612, 615 (1980) (reversible error where medical expert put in evidence the opinion of nontestifying expert) ; *Everett* v. *State*, 97 So. 2d 241, 244 (Fla. 1957) (psychiatrist not permitted to testify to what another nontestifying psychiatrist would say concerning defendant's sanity), *cert. denied*, 355 U.S. 941 (1958).

■■ In this case the improper admission of the medical opinion of a nontestifying witness constituted more than

simple hearsay. In his final argument, the state's attorney urged the jury to find the defendant sane, to convict him, and to consider in their deliberations the second concurring opinion of "the man who wrote the book" on psycho-sexual disorders, Dr. Rada. Thus, the jury was asked to base its decision upon the testimony of a witness never brought before the trier of fact and never cross-examined. This violated the defendant's confrontation rights secured by both the United States and Vermont Constitutions. U.S. Const. amends. VI, XIV; Vt. Const. ch. I, art. 10. "The right to confront witnesses is a 'fundamental' right which would be binding on the State of Vermont even if our Constitution did not require it." *State* v. *Berard, supra,* 132 Vt. at 146, 315 A.2d at 507 (citing *Smith* v. *Illinois,* 390 U.S. 129 (1968); *Pointer* v. *Texas,* 380 U.S. 400, 403 (1965)).

As the United States Supreme Court has said:

> The primary object [of the right to confront witnesses] was to prevent depositions or *ex parte* affidavits . . . in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*California* v. *Green, supra,* 399 U.S. at 157–58 (quoting *Mattox* v. *United States,* 156 U.S. 237, 242–43 (1895)).

Nowhere is this confrontation right more urgent than in the area of mental diagnoses, for they are "based so much on judgment and opinion and are so subject to disagreement among trained experts [that] they must be 'subjected to the safeguard of cross-examination of the physician who makes [them].' " *United States* v. *Bohle,* 445 F.2d 54, 64 (7th Cir. 1971) (quoting *New York Life Insurance Co.* v. *Taylor,* 147 F.2d 297, 304 (D.C. Cir. 1945)), *overruled on other grounds in United States* v. *Lawson,* 653 F.2d 299 (7th Cir. 1981), *cert. denied,* 454 U.S. 1150 (1982). A criminal defendant has the right to explore before the jury not only the basis

and content of an expert's opinion, but also the professional qualifications of the person rendering it. The proceedings below deprived the defendant of these rights.

The consequence of rejecting that portion of the expert's testimony which is inadmissible hearsay is, of course, a remand for a new trial without the improper evidence. Our decision makes consideration of the defendant's other claims of error unnecessary.

*Reversed and remanded for new trial.*