# State of Vermont v. Wendell Beattie, Sr.

[596 A.2d 919]

No. 90-121

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed July 5, 1991

*Theresa St. Helaire*, Bennington County Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

*David G. Reid*, Brattleboro, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals from his conviction of actual physical control of a motor vehicle while under the influence of intoxicating liquor in violation of 23 V.S.A. § 1201(a)(2). We affirm.

Deputy Sheriff Edward Smith testified that at 1:00 A.M. on April 24, 1989, he was alerted to defendant's van parked in a grocery store parking lot by a passing motorist, who stated that the person in the van was either asleep, passed out, or dead. Officer Smith approached the van, which had its engine run-

ning. Observing defendant slumped over the wheel, Officer Smith banged on the door. Defendant awoke and stepped on the gas pedal for three to five seconds before releasing it. When defendant rolled down the window, Officer Smith smelled a strong odor of liquor and observed that defendant's eyes were bloodshot and watery and his speech mumbled and confused. Upon getting out of the van, defendant had trouble with his balance. Officer Smith had defendant perform three dexterity tests, two of which he performed poorly. A breath sample was taken at 2:12 A.M. and was analyzed as indicating a .168% blood-alcohol content (BAC).

Defendant testified that he had worked until 10 P.M. on April 23 installing a heating system. He consumed three beers between 2:30 and 9:45. After work he returned home and then went to the store to get dinner for his son. Upon arriving, he lay his head on the wheel and rested his eyes because of exhaustion. He left the car running because it was cold. He refuted much of the officer's testimony concerning his speech, his balance problems, and his performance on the dexterity tests. He denied that he was under the influence of intoxicating liquor.

Defendant asserts five grounds for reversal. Because we find each to be without merit, we affirm.

I.

Defendant's arrest by Windham County Deputy Sheriff Smith occurred in the Town of Winhall, located in Bennington County. Defendant filed a motion to dismiss below on the basis that Deputy Sheriff Smith did not have jurisdiction to make the out-of-county arrest. The court held that Deputy Sheriff Smith had statewide jurisdiction, and defendant contests this holding on appeal.

The statutory provisions granting statewide jurisdiction to law enforcement officers were enacted by 1987, No. 122 (Adj. Sess.).* Section 1 of the Act added 24 V.S.A. § 307(c), which

---

* Defendant has moved in this Court to strike from the State's supplemental printed case affidavits from the president of the Vermont Sheriffs Association, the executive director of the Vermont Criminal Justice Training Council, and the principal lobbyist for the Vermont Police Association, outlining their understandings of the Act. Their statements are entitled to no weight

reads: "The powers of deputy sheriffs and special deputy sheriffs with respect to criminal matters and the enforcement of the law may be exercised statewide." Section 2 of the Act added 24 V.S.A. § 312, entitled "Jurisdiction of sheriffs," which provides:

(a) Subject to subsection (b) of this section, the powers of sheriffs with respect to criminal matters and the enforcement of the law may be exercised statewide.

(b) A sheriff may exercise law enforcement powers statewide only if the sheriff has completed the training requirements established for full-time law enforcement officers under section 2358 of Title 20.

Defendant's contention is that even though Deputy Sheriff Smith had completed the training requirements established for deputy sheriffs in 24 V.S.A. § 311, because he had not completed the training requirements established for full-time law enforcement officers he lacked jurisdiction by force of § 312(b). He argues that the term "sheriff" in § 312(b) is meant to encompass deputy sheriffs.

■ ■ We disagree. Defendant's reading of the statutory provisions renders § 307(c)'s distinct grant of statewide jurisdiction to deputy sheriffs wholly superfluous. If the legislature intended for § 312 to apply to deputy sheriffs as well as sheriffs, there was no reason for them to enact § 307(c). We decline to interpret the Act in a way that renders a significant part of it pure surplusage. See State v. Kreth, 150 Vt. 406, 409, 553 A.2d 554, 556 (1988) (Court reluctant to find part of statute surplusage); State v. Tierney, 138 Vt. 163, 165, 412 A.2d 298, 299 (1980) (construction of statute that renders a portion of it surplusage is not favored); 2A N. Singer, Statutes and Statutory Construction § 46.06, at 104 (C. Sands 4th ed. 1984) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous . . . .") (footnote omitted). The most natural interpretation of the statutory provisions, and one that gives effect to each provision, is that

_____

in the interpretation of the Act, and have been accorded none by this Court. See *Western Air Lines v. Board of Equalization*, 480 U.S. 123, 131 n.* (1987) ("Appellants' attempt at the creation of legislative history through *post hoc* statements of interested onlookers is entitled to no weight . . . .").

§ 307(c) and § 311 comprise the grant of statewide jurisdiction and the training requirements for deputy sheriffs, while §§ 312(a) and (b) comprise the grant of statewide jurisdiction to sheriffs and the training requirement necessary for sheriffs to exercise this jurisdiction.

Defendant counters that such an interpretation is absurd because it allows deputy sheriffs with less than full-time training to exercise statewide jurisdiction while not allowing sheriffs, who appoint the deputies, to do the same. Why would the legislature impose § 312(b)'s full-time training requirement on sheriffs and not on deputy sheriffs? One answer is that unlike deputy sheriffs, who have to meet the training requirements of § 311 to be appointed, sheriffs as elected officials have no training requirements imposed on them. See 20 V.S.A. § 2358(d). Section 312(b), by qualifying the grant of statewide jurisdiction to sheriffs, is a means of imposing a training requirement on them. Section 312(b)'s full-time training requirement thus is not a legislative determination that this is the minimum training needed by a police officer to exercise statewide jurisdiction. Rather, it is the training requirement the legislature deemed appropriate for a sheriff.

## II.

The arresting officer's affidavit of probable cause indicated that he had been told by a passing motorist that there was a person "asleep, passed out, or even dead behind the wheel of a van in Grampy's parking lot." The court granted defendant's motion in limine to exclude this statement, and allowed the officer to testify only that he received a report from a passing motorist. On the second day of trial the State asked the court to reconsider its ruling. It argued that defendant, through his own testimony and through cross-examination of the officer, had abused the motion in limine by casting doubt on the officer's reasons for approaching defendant's van. The court agreed, and allowed the officer on rebuttal to repeat the passing motorist's statement. Defendant contends that this statement was hearsay and its admission violated his confrontation clause rights.

■ ■  The statement was not hearsay, because it was not offered for the truth of the matter asserted. V.R.E. 801(c). It

was not offered to prove that defendant was "asleep, passed out, or even dead." Rather, it was offered to prove only that the officer thought he had reason to approach defendant's van. See, e.g., *United States v. Love*, 767 F.2d 1052, 1063 (4th Cir. 1985) ("out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken"), *cert. denied*, 474 U.S. 1081 (1986); *Olson v. State*, 698 P.2d 107, 113–14 (Wyo. 1985) (officer's testimony as to passing motorists' statements concerning defendant's erratic driving was not hearsay because only offered to explain why officer acted); see also C. McCormick, McCormick on Evidence § 249, at 733–34 (E. Cleary 3d ed. 1984) ("When it is proved that D made a statement to X, with the purpose of showing the probable state of mind thereby induced in X, . . . the evidence is not subject to attack as hearsay."). The introduction of such a statement must be approached with caution, however, because there is the danger that the jury will use it as proof of the matter asserted. We commend the court's initial limitation. See C. McCormick, *supra*, at 734 (an arresting officer should be allowed to explain his presence on the scene, but preferably through testimony that he acted "upon information received" or words to that effect). But we also recognize that defendant's abuse of the limitation warranted introduction of the actual statement. Further, defendant's confrontation clause rights were not violated. For the purpose offered, it mattered not whether the statement was correct, but only whether it was spoken to the officer. An opportunity to cross-examine the officer was sufficient to determine whether the statement was in fact made to him. See 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 801(c)[01], at 801–82 (1990) (since whether the statement was spoken is "within W[itness]'s own knowledge, and W[itness] is under oath and subject to cross-examination and observation of his demeanor, the trier of fact can assess his credibility. If the fact that D[eclarant] made the statement is relevant regardless of its truth, it does not matter that the trier of fact is unable to evaluate D[eclarant]'s credibility.") (footnote omitted).

## III.

■ Defendant next takes issue with some additional evidentiary points. First, defendant claims that the court erred in not

allowing defendant to appear in surrebuttal for the purpose of testifying about his lung problems. The court based its ruling on the fact that the State's chemist had testified during the State's case-in-chief about the effect of lung problems on the conversion ratio for BAC, yet the issue had remained unexplored during the subsequent direct and redirect examination of defendant. Surrebuttal was not allowed because there had been ample prior opportunity for defendant to address the issue. This ruling was committed to the court's discretion by V.R.E. 611. *State v. Valley*, 153 Vt. 380, 393, 571 A.2d 579, 586 (1989). We cannot say that this discretion was abused here. See *id.* (court properly denied defendant's request to reopen cross-examination of witness where there was no reason the questioning could not have been completed fully during the initial cross-examination).

■■ Second, defendant claims error in the court allowing the chemist, after testifying, to remain in the courtroom during defendant's testimony and then to be called in rebuttal. As amended prior to the instant trial, V.R.E. 615 limits a party's ability to exclude a witness from the courtroom: if the witness's testimony has been completed the witness may remain, even if the witness may be subsequently called in rebuttal, unless a party shows good cause for exclusion. Here, the chemist had completed his testimony within the meaning of the rule, and no good cause was shown. The argument that good cause existed because the expert could, on rebuttal, comment on defendant's testimony is not persuasive. The expert, through the use of hypotheticals based on defendant's testimony, could make the same comments even if sequestered. Further, under V.R.E. 703, an expert witness is entitled to base his or her opinion on the facts presented in evidence at trial. We find no error.

■■ Third, defendant claims that the chemist impermissibly commented on defendant's credibility. On rebuttal, the expert testified it was not possible for defendant to have a .168% BAC at 2:12 in the morning if, as defendant testified, he had consumed only three beers between 2:30 and 9:45 P.M. The expert testified that with such a drinking pattern the defendant would have no BAC at 2:12 in the morning, and that to achieve a level of .168% with such a drinking pattern defendant would

have had to consume at least fourteen standard drinks. Defendant did not object to this testimony, and accordingly our review is limited to plain error. V.R.Cr.P. 52(b); see *State v. Ross*, 152 Vt. 462, 468, 568 A.2d 335, 339 (1989). The chemist's testimony did not impermissibly intrude on the jury's province of determining credibility. It simply was an analysis of test results which was inconsistent with defendant's testimony, and the jury was free to choose between it and defendant's testimony. Admission of the expert's testimony was not error, let alone plain error. Cf. *State v. Bushey*, 149 Vt. 378, 380–81, 543 A.2d 1327, 1328–29 (1988) (not plain error for State's expert witness to testify that for defendant to achieve his BAC result, he must have had at least eight or nine drinks); *State v. Senecal*, 145 Vt. 554, 559, 497 A.2d 349, 351–52 (1985) (allowing expert to testify that the only way the individual could have a BAC below .10% at 2:30, consistent with a BAC of .19% at 3:30, would have been if he had seven drinks within the preceding half-hour; "The credibility of an expert witness and the weight to be given his testimony is a matter for the jury.").

## IV.

Defendant's next contention is that the State's amendment of the information after voir dire violated V.R.Cr.P. 7(d) and due process. The original information charged defendant with operation of a motor vehicle under the influence of intoxicating liquor in violation of 23 V.S.A. § 1201. Voir dire and selection of the jury panel took place on December 6, 1989, but the panel was not sworn until trial. The State amended the information on December 8, striking operation and charging actual physical control. Defendant's motion opposing the amendment was denied by the court. Trial began on January 10, 1990, and defendant was convicted of actual physical control.

Rule 7(d) provides: "If no additional or different offense is charged and if substantial rights of the defendant are not prejudiced, the court may permit an . . . information to be amended at any time after trial has commenced and before verdict or finding . . . ." Rule 7(d) applies only after trial has commenced. Defendant argues that, for purposes of Rule 7(d), trial commences at voir dire. We disagree. There is nothing in the

Rule to suggest that the time for commencement of trial is other than the familiar time for double jeopardy purposes. See *State v. Bluhm,* 460 N.W.2d 22, 24 (Minn. 1990) (amendment during jury selection was not after commencement of trial; trial commences when jeopardy attaches upon the impanelling and swearing of the jury); see also *Cervantes v. People,* 715 P.2d 783, 786 (Colo. 1986) (en banc) (because amendment was "after the jury was chosen and sworn" it was not "prior to trial" for purposes of amending the information). In a jury trial, jeopardy attaches at the impanelling and swearing of the jury. *State v. Corey,* 151 Vt. 325, 330, 561 A.2d 87, 89 (1989). Because the amendment here was made prior to this time, Rule 7(d) is not applicable.

▮ This interpretation of the Rule does not leave defendant without protection. Defendant retains the constitutional guarantee of fair notice of the charges against him. See Reporter's Notes, V.R.Cr.P. 7(d), at 41 ("The right to amend prior to trial remains subject . . . to the constitutional requirement that the defendant receive fair notice of the charge."); see also *State v. Holden,* 136 Vt. 158, 159–60, 385 A.2d 1092, 1093–94 (1978) (amendment on day of trial, immediately prior to drawing of jury, should have been conditioned on granting defendant's request for continuance). Defendant was not prejudiced in his preparation for trial. The amendment was made over a month prior to trial. In addition, the affidavit of probable cause provided to defendant on the date of arraignment indicated the arresting officer's belief that defendant was in "actual physical control." See *State v. Loso,* 151 Vt. 262, 265–66, 559 A.2d 681, 684 (1989) (affidavit of probable cause accompanying the information can be considered in assessing whether defendant received fair notice of the charge). Nor can we perceive any possible prejudice to defendant's voir dire because of the amendment from operation to actual physical control. Accordingly, we hold that defendant received fair notice of the charge against him.

V.

▮ Finally, defendant argues that he was denied a fair trial because the officer, during cross-examination by defense coun-

sel, twice made reference to giving defendant an alcosensor test. Former 23 V.S.A. § 1202(b) (current version at 23 V.S.A. § 1203(f)) provided that "[t]he results of the breath alcohol screening test shall not be introduced as evidence." The State did not elicit this information on direct examination, and although the fact that an alcosensor test is given should be avoided where an officer's basis for taking a breath sample is not at issue, see *State v. LeBeau*, 144 Vt. 315, 319, 476 A.2d 128, 130 (1984); 23 V.S.A. § 1202(a), the legislative proscription is only on the introduction of the test results. Defendant was not deprived of a fair trial because of the officer's statements.

*Affirmed.*