2004 VT 3

## State of Vermont v. Robert Gemler

[844 A.2d 757]

No. 02-530

Present: **Amestoy, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed January 16, 2004
Motion for Reargument Denied February 11, 2004

*Thomas M. Kelly*, Washington County Deputy State's Attorney, Barre, for Plaintiff-Appellee.

*George H. Ostler* and *Christopher A. Dall* of *DesMeules, Olmstead & Ostler*, Norwich, for Defendant-Appellant.

¶ 1. **Amestoy, C.J.** In this appeal of his conviction for driving a motor vehicle while under the influence of intoxicating liquor, defendant claims the trial court erred in (1) denying defendant's pretrial motion to suppress statements elicited from defendant while in circumstances that required *Miranda* warnings, and in consequently denying his motion to dismiss for lack of prima facie case; (2) admitting hearsay evidence highly prejudicial to defendant; and (3) denying defendant's motion for a mistrial after a police officer testified about matters subject to exclusion pursuant to a motion in limine. We affirm.

¶ 2. On July 11, 2000, at about 8:00 p.m., a Vermont State Police officer was flagged down by a motorist. The motorist complained that a green Chevy truck with New Hampshire plates was being operated erratically on the northbound lane of I-89, between exits 9 and 10. The police officer radioed the Waterbury Police Department, and passed along the complaint and the description of the vehicle. The officer did not identify the informant.

¶ 3. Two police officers responded to the complaint, Waterbury officer Jason Billings and Washington County Deputy Sheriff Scott Patterson. Patterson, traveling south on I-89, saw the suspect truck traveling north. He testified that the operator had dark hair and was wearing a pink shirt and a baseball cap, and that there was nobody else in the truck. Patterson radioed Billings to look for the vehicle, as it was apparently leaving the highway at Exit 10, Waterbury. At approximately 8:13 p.m., Billings located a green Chevy truck with New Hampshire tags in the parking lot of the Holiday Inn in Waterbury.

¶ 4. When Billings entered the lobby, he found defendant talking to the clerk. Billings asked defendant whether he was the owner of the green truck. Defendant responded by asking the officer why he wanted to know. When Billings told defendant about the complaint, defendant refused to answer whether he was the owner of the vehicle. Billings noticed that defendant had trouble focusing, his speech was mumbled and slurred, and his eyes were watery and bloodshot. Defendant also refused to produce identification. Officer Patterson arrived at the hotel shortly thereafter.

He noted that defendant was wearing a pink shirt and had dark hair, like the person he had seen operating the truck. Patterson detected a strong odor of alcohol coming from defendant and observed that he was unsteady. Patterson warned defendant that he would be placed in custody if he did not provide identification. Defendant then produced a driver's license. In response to a question from an officer, defendant denied drinking and driving, stating, "I drove up and drank at [the hotel] bar." Because the officers suspected defendant of operating the vehicle while intoxicated, defendant was asked to perform dexterity tests, which he failed. Defendant was then taken into custody and transported to the Vermont State Police barracks for processing. Although he refused to submit to an evidentiary test, defendant stated, "Off the record, I drove up from New Hampshire, stopped at a bar in White River, and had seven Budweiser beers. I know that [you are] doing your job and you will get me."

¶ 5. After arraignment, defendant filed a motion to suppress and dismiss. The court granted the motion to suppress the statements given while defendant was at the station, because, although apparently voluntary, the police officers were not present at the hearing to explain the circumstances in which the statements were made. Defendant filed a second motion requesting the suppression of statements made while he was still at the Holiday Inn. The trial court refused to suppress those statements, rejecting defendant's theory that an officer's request to a defendant to "produce identification or be placed in custody" escalated an investigative detention into a custodial interrogation. The court also denied defendant's motion to dismiss for lack of a prima facie case, in which defendant argued that the State could not prove operation, holding that the statement "I drove up and drank at the bar" was sufficient evidence of operation. At trial, defendant's theory of the case was that defendant's employee drove the truck to the hotel's parking lot, got in an unidentified woman's car, and left defendant alone in the truck.

¶ 6. Defendant first claims that the court erred in denying his motion to suppress the prearrest statements he made to the officers at the Holiday Inn because the statements were the fruit of an unlawful interrogation. According to defendant, when police officers gave him an ultimatum to produce identification or be arrested, they placed him "in custody." Defendant asserts that subsequent questioning regarding whether he had been drinking and driving, without giving him the requisite warnings, constituted a violation of defendant's Fifth Amendment rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).

■ ¶ 7. Police can stop and briefly detain a person to conduct an investigation if an officer has reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 23-24 (1968). "Although there is no bright-line test for distinguishing between a stop and an arrest, it is useful to look at a number of factors in determining the reasonableness of an investigative stop, including the time, place, duration, and degree of intrusiveness of the stop." *State v. Caron*, 155 Vt. 492, 500, 586 A.2d 1127, 1132 (1990). "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more informa-tion, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, 407 U.S. 143, 146 (1972). Once the police have stopped an individual, the investigating officer needs to have some additional recourse to obtain information, especially the individual's identity; otherwise the investigative stop would serve no purpose. See *United States v. Jones*, 759 F.2d 633, 642 (8th Cir. 1985).

■ ¶ 8. Although defendant vigorously asserts that the trial court's failure to apply *Miranda* to the facts of this case "flies in the face of Fifth Amendment jurisprudence," we discern no error in the trial court's reasoning. As we have recently observed, the United States Supreme Court's particular concern in *Miranda* was with "'incommunicado interrogation of individuals in a police-dominated atmosphere.'" *State v. Garbutt*, 173 Vt. 277, 282, 790 A.2d 444, 448 (2001) (quoting *Miranda*, 384 U.S. at 445). While the Supreme Court has acknowledged that, for example, most motorists would not feel free to leave the scene of a traffic stop without the investigating officer's permission, "persons temporarily detained pursuant to such stops are not in custody for the purposes of *Miranda* absent some showing that they were subjected to restraints comparable to those associated with a formal arrest." *State v. Lancto*, 155 Vt. 168, 171, 582 A.2d 448, 449 (1990) (internal quotations omitted). Moreover, one can be detained by the police, not be free to go, but still not be in custody for *Miranda* purposes. *Garbutt*, 173 Vt. at 283, 790 A.2d at 448.

■ ¶ 9. We have held that a suspected drunk driver who had been involved in an accident was not in custody when a police officer told him to take a seat in the police cruiser, and then proceeded to question him regarding his alcohol consumption. *State v. Lancto*, 155 Vt. at 170-72, 582 A.2d at 448-50. We noted that "the stop was routine and the detention was brief. Only one officer was involved, and the interrogation was conducted in a public highway . . . ." *Id.* at 172, 582 A.2d at 450 (internal quotations omitted). Defendant attempts to distinguish this case from

*Lancto* arguing that "there is substantially more police presence in the present case." While it is true that in *Lancto* there was only one police officer and here there were two, the distinction is not significant, particularly considering that in *Lancto* the suspect was placed in a police cruiser, a more imposing and police dominated space than the public lobby of a hotel, where the encounter was witnessed by hotel employees. See *Berkemer v. McCarty*, 468 U.S. 420, 438 (1984) ("This exposure to public view both reduces the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse."). Therefore, *Miranda* warnings were not needed, and the statements were properly admitted to prove operation. There was no error in the denial of the motions to suppress and dismiss.

¶ 10. Defendant next argues that the trial court erred in expanding the scope of testimony allowable regarding the information provided by the anonymous informant. Defendant claims that evidence of the anonymous informant's complaint about a green Chevy truck with New Hampshire plates was hearsay and that its admission was highly prejudicial and an infringement upon defendant's right of confrontation. In a preliminary suppression hearing, the State argued that the purpose of the evidence was first, to explain the reasons for the search for the vehicle, and second, to put in context the interaction with defendant at the hotel lobby, where Officer Billings asked defendant whether he was the owner of the truck. The motion judge denied in part the motion to suppress. The judge characterized the statement as hearsay, "on the other hand admissible to show why the law enforcement did what they did." To attain what the court considered "a fair balancing," and with the understanding that both parties agreed on this point, the court excluded the tip details about erratic driving, allowing only a reference to "a complaint by an unidentified person." Immediately before trial, in response to the State's motion, a second judge allowed the statement to include the description of the vehicle and its registration number. The court noted its ruling was not an expansion, but rather an interpretation of the intended limits of the suppression, stating that without the description "there's absolutely no reason why anybody would know how law enforcement decided to do what they did when they did it." We find no error in the admission of the information.

¶ 11. We will reverse a trial court's decision to admit evidence only if the court withheld or abused its discretion. *State v. Powers*, 163 Vt. 98, 100, 655 A.2d 712, 713 (1994). "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in

evidence to prove the truth of the matter asserted." V.R.E. 801(c). The statements at issue here were not offered for their truth, but to explain the officers' conduct and their interaction with defendant, and are therefore admissible. See *State v. Beattie*, 157 Vt. 162, 166, 596 A.2d 919, 922 (1991) (statement by motorist that a driver was "asleep, passed out, or even dead" at the wheel not hearsay because it was offered to explain the police officer's approach to the vehicle, not that the driver was asleep or passed out); *State v. Bernier*, 157 Vt. 265, 269, 569 A.2d 789, 791-92 (1991) (police officer's questions were admissible to put responses into context).

■ ¶ 12. Defendant's argument that admission of these statements constituted a violation of his right to confront the declarant has no merit. The Confrontation Clause preference for a face to face confrontation at trial is to allow the jury to determine the witness credibility, possible bias, and ability to recall. See *State v. Carroll*, 147 Vt. 108, 111, 513 A.2d 1159, 1161 (1986); *State v. Towne*, 142 Vt. 241, 247, 453 A.2d 1133, 1135-36 (1982). Because the statement was not introduced for the purpose of proving the truth of the matter asserted, but to explain the police conduct, the credibility of the informant was not at issue. Therefore, defendant's Sixth Amendment rights were not affected by the admission of the testimony.

■ ¶ 13. Defendant further argues that the statements should have been excluded under V.R.E. 403 because their prejudice substantially outweighed their probative value. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. V.R.E. 403. The trial court has discretion in conducting this balancing, and its rulings will not be reversed absent a showing of an abuse of that discretion. *State v. Cartee*, 161 Vt. 73, 75, 632 A.2d 1108, 1110 (1993). On appeal, the burden falls upon defendant to show that the court's discretion was either withheld or exercised on clearly unreasonable grounds. *State v. Shippee*, 2003 VT 106, ¶ 13, 176 Vt. 542, 839 A.2d 566 (mem.). We find no abuse of discretion in the trial court's decision and further observe that, while the statement's probative value is clear, its prejudicial effect is unclear, considering that defendant's defense at trial was that somebody else was operating the vehicle.

¶ 14. Defendant's final claim is that the trial court erred in denying defendant's motion for mistrial when — despite the court's initial ruling that excluded that part of the citizen's complaint — Officer Patterson testified that the complaint concerned erratic driving:

Q. About eight o'clock that night . . . did you have a report that led later to your contact with defendant, Robert Gemler?

A. Yes. I received a report of a BOL, which is a be on lookout, which was issued by the Vermont State Police dispatcher, for a green Chevy truck with New Hampshire registration, heading northbound on Interstate 89 between Exits 9 and 10, and the vehicle was operating erratically.

¶ 15. The officer's mention of the erratic driving prompted the defense's motion for a mistrial. After allowing the defense to voir dire the officer, the court denied the motion. The court reasoned that the question that elicited the testimony was a "fairly foundational one," that revealed no bad faith on the prosecution's part. The court exercised its discretion, finding that the statement did not rise to the level of prejudice, because the statement referred to erratic driving and the asserted defense was that defendant was not operating at all.

¶ 16. The trial court has discretion in ruling upon a mistrial motion. *State v. Mears*, 170 Vt. 336, 345, 749 A.2d 600, 607 (2000). This discretion is not abused unless the court entirely withholds it, or exercises it upon grounds that are clearly untenable or unreasonable. *Id.* In order to constitute reversible error, "it must appear affirmatively that a denial of the motion has resulted in prejudice to the moving party, with the burden of proof being on the movant." *State v. Covell*, 142 Vt. 197, 199, 453 A.2d 1118, 1119 (1982). Whether the moving party was prejudiced depends on the facts and circumstances of each case, and therefore we review the denial of the motion within the context of the entire proceedings. *Id.*

¶ 17. We agree with the trial court that under the circumstances of this case the statement does not rise to the level of prejudice that would require a mistrial. The trial court's decision noted that the statement was inadvertent and not elicited in bad faith. Moreover, as the trial court further observed, a report that the vehicle was being operated erratically could not be said to prejudice defendant, in light of his defense that he was not operating the vehicle.

*Affirmed.*