2008 VT 87

**STATE of Vermont v. Todd W. BRUNELLE**

[958 A.2d 657]

No. 07-079

¶ 1. June 19, 2008. Defendant appeals from a felony conviction of aiding and abetting retail theft in excess of $900. Defendant argues that the trial court erred in: (1) denying his motion for judgment of acquittal because the evidence was insufficient to demonstrate that he was part of a common plan to steal the merchandise; (2) admitting statements from an anonymous caller; (3) summarizing testimony instead of reading from the trial transcript in response to a jury query during deliberation; and (4) instructing the jury, in part, that defendant was guilty if he intended the "natural and probable" consequences of his actions. We affirm.

¶ 2. The record reveals the following. Defendant was charged with two counts of aiding and abetting retail theft following two incidents in December 2005 at a Home Depot store.[1] The State alleged that defendant and his girlfriend prearranged with a store cashier, whom both defendant and his girlfriend knew, to obtain merchandise without paying for the items.

¶ 3. At trial, the State presented the testimony of the cashier, the store investigator, and the arresting officer. Home Depot's loss-prevention investigator testified that he began investigating the cashier in the late summer of 2005 after he received an anonymous telephone call that the cashier and his friends were taking items from the store. The investigator received a second call on December 16, and the investigator testified that this time the caller described the people involved and the things taken. The court overruled defendant's objection that the telephone calls were inadmissible hearsay. The investigator further explained that in response to the second call he went back into the store's records and found a transaction from the previous day, December 15, during which defendant and his girlfriend went through the cashier's line with many items. The investigator described how the cashier's log showed that the cashier rang through the merchandise and then corrected each amount to zero. The investigator also testified that on December 17 he observed defendant and his girlfriend return, shop for items, and again check out with the same cashier in a similar manner. The State introduced video surveillance tapes of the two transactions. The tapes did not confirm that defendant was physically present at the checkout on either day when his girlfriend went

_____

_____

[1] The State alleged that on December 15 defendant committed retail theft of merchandise less than $900 and on December 17 retail theft of merchandise in excess of $900.

through the motions of payment, but the investigator testified that during the second transaction he personally observed defendant in the vicinity of the cashier's station, beyond the camera's view, while his girlfriend finished having her cart of goods scanned by the cashier.

¶ 4. The cashier testified that he was friends with defendant's girlfriend and spent time at her house regularly. He testified that at the time of the incidents he had known defendant for almost two years. The cashier explained that the three of them concocted the plan so that defendant's girlfriend could obtain items to redecorate her home. The cashier testified that the three agreed, earlier on the same day of the theft, to take merchandise from Home Depot. The cashier said that defendant threatened to smash his windows if he did not go along with the plan. The cashier admitted that they took items on both December 15 and 17. He described how he scanned each item so that the transaction would appear legitimate and then he corrected each price to zero. He also testified that during the December 17 transaction he took defendant's girlfriend's food stamp card and ran it through the credit card scanner backwards to further mimic a legitimate transaction.

¶ 5. The arresting officer testified that, while interviewing the cashier at Home Depot, defendant and his girlfriend coincidentally arrived, and he met them in front of the store. The girlfriend excused herself to go to the bathroom and, despite the officer's request that she come back afterwards, she never returned. Defendant stayed, and when told that store video surveillance had caught three people involved with removing merchandise, defendant responded to the effect that "he would not be seen on video making any transactions." According to the officer, defendant recognized the cashier's name, but denied knowing the cashier or having any interactions with him.

¶ 6. Defendant testified on his own behalf. Defendant denied the allegations, asserting that he thought the cashier had offered to buy items for defendant's girlfriend as a Christmas gift. Although defendant admitted that he was present on both days and helped his girlfriend shop for items, he believed that the transactions were legitimate. Defendant further explained that he was not present during the actual transactions at the register and thought that all items were properly paid for by the cashier.

¶ 7. The jury acquitted defendant of the first charge of aiding and abetting retail theft, but convicted him on the second charge. Defendant filed a timely notice of appeal.

¶ 8. Defendant first argues that the State's evidence is insufficient to support his conviction, and that consequently the court erred in denying his motion for acquittal. V.R.Cr.P. 29. Specifically, defendant contends that there was insufficient evidence to prove that he intended to steal the items pursuant to a common plan. On appeal from denial of a motion for acquittal, "we look at the evidence presented by the State, viewing it in the light most favorable to the prosecution and excluding any modifying evidence, and determine whether that evidence sufficiently and fairly supports a finding of guilt beyond a reasonable doubt." *State v. Grega*, 168 Vt. 363, 380, 721 A.2d 445, 457 (1998).

¶ 9. To meet its burden of proof, the State needed to prove defendant aided and abetted the retail theft "with [the] intent of depriving a merchant wrongfully of the lawful possession of merchandise," 13 V.S.A. § 2575, pursuant to a "common understanding" with the cashier and his girlfriend. *State v. Bacon*, 163 Vt. 279, 288, 658 A.2d 54, 61 (1995) (quotation omitted). The State presented evidence of defendant's intent and the existence of a common plan through the testimony of the cashier, the store investigator and the

arresting officer. Based solely on the cashier's testimony that he had a plan with defendant and defendant's girlfriend to take the items from Home Depot, the jury could infer defendant's intent. Defendant contends that the cashier's testimony was unreliable because the cashier has a history of untrustworthiness. The jury determines a witness's credibility, however, and was free to credit the cashier's testimony, regardless of his prior criminal record and previous false and inconsistent statements. *State v. Perez*, 2006 VT 53, ¶ 21, 180 Vt. 388, 912 A.2d 944 (explaining that the jury decides a witness's credibility).[2] Viewing the evidence in the light most favorable to the State, and excluding modifying evidence, including defendant's own explanation of the events, we conclude that there was sufficient evidence to demonstrate that defendant intended to take the merchandise as part of a common plan.

¶ 10. Defendant next claims that the trial court erred in admitting the contents of anonymous calls received by the Home Depot investigator. Defendant first argues that the statements should have been excluded as hearsay. Defendant objects to three statements in particular made by Home Depot's investigator, two made during direct examination and one on redirect. On direct examination, the investigator testified that as a result of an anonymous call it "came to [his] attention there were allegations that product [was] being taken from the store by [the cashier] and his friends." In addition, the

---

[2] Defendant also argues that the weight of the evidence equally supported a judgment of acquittal and guilty and, in such a case, a judgment of acquittal is appropriate. Having concluded that the evidence was sufficient to support a guilty verdict as a matter of law, we decline to reweigh the evidence because the weight of testimony is solely within the province of the jury. *Perez*, 2006 VT 53, ¶ 21.

investigator testified that the telephone call in December described "the people as well as the merchandise that was taken the day before from the store." On redirect, the investigator testified that the caller indicated that defendant would stay out of camera view at the register.

¶ 11. As to the statements made on direct examination, we conclude that there was no error because the statements were not admitted for their truth. See V.R.E. 801(c) (defining hearsay as an out-of-court statement offered to prove the truth of the matter asserted). Statements are not hearsay if they are used to explain the subsequent conduct of the person to whom they are directed. *State v. Gemler*, 2004 VT 3, ¶ 11, 176 Vt. 257, 844 A.2d 757. That the caller intended the information be relied upon as true, as argued by defendant, is irrelevant where, as here, the evidence of the telephone calls was introduced to illustrate why the Home Depot investigator was monitoring that cashier's activities, not to prove that defendant committed retail theft. Thus, the trial court did not abuse its discretion in admitting the evidence. See *State v. Voorheis*, 2004 VT 10, ¶ 24, 176 Vt. 265, 844 A.2d 794 (explaining that the trial court has discretion to determine the admissibility of evidence, including whether statements fall within an exception to the hearsay rule).

¶ 12. As to the investigator's third statement that the anonymous caller warned that defendant would avoid the surveillance cameras, we conclude that there was no error given that defendant himself first introduced this testimony on cross-examination. Defendant questioned the investigator about defendant's absence in the video of the cashier's station during the December 15 transaction. Explaining why he viewed the transaction with suspicion despite its otherwise legitimate appearance, the investigator stated that the caller told him that defendant would "stand out of view of the camera."

Defendant's claim that the court erred in admitting the investigator's similar statement during redirect is not persuasive. A party "must assume the responsibility for whatever prejudice to his case" is derived from a claim of error "based on evidence introduced by the aggrieved party." *State v Massey*, 169 Vt. 180, 185, 730 A.2d 623, 627 (1999) (quotations omitted). Having chosen to elicit the testimony during cross-examination, defendant cannot now object that the statement was inadmissible. See *id.* (holding that the defendant must assume responsibility for whatever prejudice is derived from testimony he gave on direct examination).

¶ 13. On appeal, defendant also argues that the three references to the calls by the investigator should have been excluded because their probative value was outweighed by the risk of unfair prejudice, see V.R.E. 403, and because admitting the statements violated defendant's constitutional right to confront adverse witnesses. Defendant did not raise either of these arguments before the trial court, and thus we review for plain error. See V.R.Cr.P. 52(b). We address the third reference first and conclude, as already described, that defendant's own introduction of the investigator's testimony about the caller's arguable hearsay statement that defendant would stay out of camera view precludes him from claiming prejudice arising from that statement.

¶ 14. Additionally, we hold that no confrontation issue arose regarding the first two references — generally describing the anonymous tips that alerted the investigator to complaints of retail theft and the cashier's involvement — because they were not hearsay. *Gemler*, 2004 VT 3, ¶ 12 (explaining that "[t]he Confrontation Clause preference for a face to face confrontation at trial is to allow the jury to determine the witness credibility, possible bias, and ability to recall," therefore when the statement is not admitted for its truth, credibility is not an issue). These statements were introduced not for their truth, but to explain why the investigator began reviewing surveillance tapes and turned his attention to the cashier and to the customer-couple later determined to be defendant and his girlfriend. We conclude that any prejudice from admitting these statements did not rise to plain error because the statements were of limited value in demonstrating defendant's guilt and were cumulative of other evidence directly implicating defendant.[3] *State v Babson*, 2006 VT 96, ¶ 8, 180 Vt. 602, 908 A.2d 500 (mem.) (explaining that plain error must affect substantial rights and be prejudicial to defendant).

¶ 15. Defendant argues that the court committed plain error in summarizing the cashier's testimony in response to a jury question instead of reading from the transcript. During deliberations, the jury asked to hear the cashier's testimony about the card that was swiped at the register during the December 17 incident. The court held a short bench conference with the attorneys. The court then instructed the jury that "it's our collective memory, that is the attorneys and myself, that [the cashier] said that he had, I can't remember the exact words but something like he had either taken [the girlfriend's] card or [defendant's] card." Defendant concurred in this recollection and did not object. In fact, the cashier's actual testimony was that he scanned the girlfriend's food stamp card.

¶ 16. On appeal, defendant contends that the court's statement was plain error because it violated his right to a fair trial. The court's declared recollection was inaccurate to be sure, and we do not con-

---

[3] To the extent it was revealed that one caller provided physical descriptions matching defendant, his girlfriend, and the merchandise involved, the jury could confirm those identities independently from the surveillance tapes and sales records introduced at trial.

done speculating at testimony in response to a jury question; however, the recollection was not plain error warranting reversal. "Plain error exists only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." *State v. Carpenter*, 170 Vt. 371, 375, 749 A.2d 1137, 1139-40 (2000) (quotation omitted). Plain error depends on the facts of each case, and key factors to be considered are the "[o]bviousness of the error and prejudice to defendant." *State v. Weeks*, 160 Vt. 393, 400, 628 A.2d 1262, 1266 (1993). Here, the error was not obvious; in fact, defendant wholly joined in the court's recollection of the evidence. In addition, the prejudice was not great because the court's statement was ambiguous; it neither excluded a finding that the cashier scanned the girlfriend's card, nor compelled a finding that defendant's card was used instead. See *People v. Anderson*, 620 N.E.2d 1281, 1297 (Ill. App. Ct. 1993) (explaining that a trial judge's comments are reversible error if they were a material factor in the conviction, and "[a]n ambiguous comment [by the trial judge] will not be considered prejudicial error"). Under these circumstances, we conclude that the court's partially incorrect statement did not rise to the level of plain error. See *State v. Morrill*, 127 Vt. 506, 511, 253 A.2d 142, 145 (1969) (allowing reversal for errors not raised below only in "rare and extraordinary cases" for the most "glaring error").

¶ 17. Finally, we address defendant's argument that the court committed plain error in instructing the jury that defendant intended the "natural and probable" consequences of his actions. Defendant relies on *State v. Bacon* for support of his argument that the court's instruction allowed the jury to convict him of retail theft simply by finding that he pushed a shopping cart through the store and took the items to the car, even if he did not intend to deprive Home Depot of merchandise. In *Bacon*, we concluded that the jury instructions on accomplice liability improperly permitted the jury to convict the defendant of being an accomplice to felony-murder even if he did not have the requisite mental state because the instructions stated a person is liable for the "natural and probable conseque[s]" of the plan between them. 163 Vt. at 286-87, 658 A.2d at 60. We emphasized that to be convicted as an accomplice a defendant must have the same intent as that required for the principal of the crime. *Id.* at 289, 658 A.2d at 61.

¶ 18. On appeal, we view jury instructions as a whole and "will reverse only when the entire charge undermines confidence in the verdict." *Perez*, 2006 VT 53, ¶ 16 (quotation omitted). Defendant agrees that he failed to object to the jury instructions. Thus, we will reverse only if the error affects substantial rights and has a prejudicial impact on the jury's deliberations. *State v. Lambert*, 2003 VT 28, ¶ 14, 175 Vt. 275, 830 A.2d 9. Here, as indicated by defendant, at the end of its instruction on mens rea, the court instructed:

> The intent with which a person does an act may be shown by the way in which he or she expresses it to others, or by his or her conduct. A person ordinarily intends the natural and probable consequences of his or her voluntary acts, knowingly done.

By itself, this may have been plain error, but this passage was not presented to the jury in a vacuum. Immediately preceding this language was the court's more exacting instruction on the criminal intent necessary to convict:

> Every person who knowingly and willfully participated in the

commission of the crime may be convicted of the crime. However, the State must have proven that the Defendant *acted with the same intent as that of the accomplice.*

. . . .

The fourth essential element is that [defendant] and the accomplice intended to wrongfully deprive the merchant of the lawful possession of its merchandise. . . . [Defendant] and the accomplice must have taken the merchandise *with the purpose and intent to deprive the merchant of the lawful possession of its merchandise.* They also must have acted voluntarily, and not inadvertently, or because of mistake, or by accident.

(Emphasis added.) Considered in toto, and unlike *Bacon*, these instructions did not allow the jury to impute a mental state to defendant short of shared specific intent, and adequately informed the jury that the State must prove that defendant had the intent to commit retail theft. See *Lambert*, 2003 VT 28, ¶ 16. We conclude that, taking the instructions as a whole, there was no error.

*Affirmed.*