VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.    24-AP-179

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JUNE TERM,   2025

State of Vermont v. Christopher Fuller\*

}   APPEALED FROM:
}   Superior Court, Caledonia Unit,
}   Criminal Division
}   CASE NO. 23-CR-06399
Trial Judge: Michael R. Kainen

In the above-entitled cause, the Clerk will enter:

Defendant appeals his jury conviction of violating an abuse-prevention order.  We affirm.

Defendant was charged with violating a relief-from-abuse (RFA) order that prohibited him from going within 200 feet of the complainant's residence for a purpose other than arranging visitation with his children.  At trial, the State presented the following evidence.

Vermont State Trooper Griffin Pearson testified that early one morning in June 2023, he was dispatched to the home of the complainant, Kendra Fuller.  Prior to speaking to the complainant, he reviewed the RFA order, which required defendant to stay 200 feet away from the complainant and her residence but stated that defendant could have direct or indirect contact with the complainant solely for the purpose of arranging visitation with the parties' children.

Trooper Pearson went to the complainant's home, which was at the end of a dead-end road.  The house was about fifteen to twenty feet from the edge of the road.  He met the complainant outside her house.  She was upset and crying.  He asked her questions to determine if the RFA order had been violated.  After she told him her side of the story, he asked if she knew "where the individual may be," and she provided an address.

Trooper Pearson and Trooper Kyle Fecher, who had subsequently arrived at the complainant's house, both traveled to defendant's apartment building.  They saw a vehicle nearby that matched the description given by the complainant.  They knocked on defendant's door and spoke to him.  Their interaction was recorded on the troopers' body cameras.

The State played a portion of the video recording for the jury.  It showed Trooper Pearson knocking on defendant's door.  After introducing himself, he stated, "Ok, so, why are you going over to Kendra's house when you know you have an RFA that says you cannot do that?"  Defendant responded, "I understand that.  Uh because she egged me on this evening, she asked for some money and I was trying to provide for my boys, but I didn't know what to do."

Trooper Pearson testified that they continued to talk for approximately half an hour, during which defendant acknowledged that he went to the complainant's house and gave various different explanations why, none of which were to arrange visitation with his children. Defendant told the troopers, "I get it. I went over; it won't happen again." The troopers issued defendant a citation and left the scene.

On cross-examination, defense counsel asked Trooper Pearson if he had ever witnessed any interaction between defendant and the complainant. Trooper Pearson responded that the complainant showed him a video on her phone in which defendant was visible in his white GMC Envoy. The complainant repeatedly told defendant that he could not be there and needed to leave, and defendant kept saying, "I love you," and "I want this to work." The trooper could tell from the background that the video was taken at the complainant's house and the time stamp indicated that it was taken that evening. There was no indication that defendant had gone to the complainant's home to facilitate visitation.

On redirect, the State sought to play additional portions of Trooper Pearson's body-camera recording to rebut defense counsel's suggestion that defendant was impaired or otherwise did not understand what was happening. The court allowed the State to play a portion in which the trooper told defendant, "So you can't be driving to her house, you can't be texting her, you can't be calling her, you can't do what you've been doing," and defendant responded, "I understand that. I did that basically it was just like because I was trying to help my children."

Trooper Fecher's testimony was similar to that of Trooper Pearson. Trooper Fecher added that when they first arrived at defendant's address and located defendant's car, he checked the hood and it felt warm to the touch, indicating that it was recently operated. Trooper Fecher testified that defendant told the troopers that he had driven to the complainant's house a couple of hours earlier and got out of his car "long enough to say hello."

After the State rested, defendant moved for judgment of acquittal, arguing that there was insufficient evidence to prove the charge and no evidence that he was served with the RFA order. The court denied the motion. Defendant did not testify or present any witnesses. The jury found defendant guilty. The court imposed a suspended sentence of one to three months.

Defendant subsequently filed a motion for judgment of acquittal under the corpus delicti rule, arguing that there was insufficient evidence to corroborate his admission to the troopers that he had gone to the complainant's house. The court denied the motion, concluding that the troopers' testimony about being dispatched to the complainant's home in the middle of the night, the complainant's demeanor when they arrived, Trooper Pearson's description of the video shown to him by the complainant, the fact that she gave them defendant's address, and Trooper Fecher's testimony that the hood of defendant's car was still warm all corroborated defendant's later admission to the violation.

Defendant's first argument on appeal is that the court's admission of testimonial hearsay from the complainant, who did not testify at trial, violated his right to confrontation. Defendant argues that the court erred in admitting the complainant's statements that defendant went to her residence and about where defendant lived and what kind of car he was driving. Defendant concedes that he did not object on this ground below but argues that the admission of the evidence was plain error. "Plain error lies only in the rare and extraordinary cases where a glaring error occurred during trial that was so grave and serious that it strikes at the very heart of defendant's constitutional rights." State v. Leroux, 2008 VT 104, ¶ 12, 184 Vt. 396 (quotation omitted).

2

The record does not support defendant's claim of error, for several reasons. First, neither trooper actually testified that the complainant said that defendant went to her house or told them what car he was driving. While Trooper Pearson did testify about the contents of a video that the complainant showed him on her phone, and statements she made in that video, this testimony was elicited by defense counsel. Defendant did not request a curative instruction or move for a mistrial, and instead went on to ask several more questions about the video. Under these circumstances, the court's failure to take some unspecified action in response to the testimony does not amount to plain error. See State v. Turner, 145 Vt. 399, 403-04 (1985) (holding that State's unobjected-to questioning of defendant, which elicited admission that defendant drank while driving, did not constitute plain error where defendant refused curative instruction and did not move for mistrial). For the same reason, defendant's argument, raised for the first time on appeal, that the testimony about the video was inadmissible under Vermont Rule of Evidence 1002 fails as well.

Trooper Pearson did testify that the complainant provided an address for defendant. However, we are unpersuaded that the admission of this statement violated defendant's right to confront the complainant. "The Confrontation Clause preference for a face to face confrontation at trial is to allow the jury to determine the witness['s] credibility, possible bias, and ability to recall." State v. Gemler, 2004 VT 3, ¶ 12, 176 Vt. 257. When, as here, the statement was not offered for its truth "but to explain the police conduct, the credibility of the informant was not at issue." Id. (affirming admission of evidence that anonymous informant had complained that green Chevy truck with New Hampshire plates was being operated erratically on highway because offered to explain police officers' conduct, not truth of assertion). Accordingly, defendant's right to confrontation was not violated by the admission of the testimony.

Defendant next argues that the court erred in denying his motion for judgment of acquittal under the corpus delicti rule. The rule requires that when a criminal charge is based on a confession, the corpus delicti, or "body of the crime," "must be corroborated by independent evidence." State v. FitzGerald, 165 Vt. 343, 350 (1996). The purpose of the rule "is to foreclose the possibility of conviction based on false confession where, in fact, no crime has been committed." Id. "The corroborating evidence need not independently prove commission of the crime beyond a reasonable doubt, however; even slight corroboration may be sufficient." Id. In reviewing the denial of a motion for judgment of acquittal under the corpus delicti rule, we view the evidence in the light most favorable to the State and will uphold the court's ruling if the evidence could support a finding of guilt beyond a reasonable doubt. Id.; see also State v. Tonzola, 159 Vt. 491, 496 (1993) (describing general standard of review for motion for judgment of acquittal).

We conclude that the record contains sufficient admissible evidence to corroborate defendant's admission that he went to the complainant's home and to allow the jury to find beyond a reasonable doubt that the RFA order had been violated. This evidence includes the fact that someone, presumably the complainant, called the police to report that defendant had violated the order, causing the troopers to be dispatched to her home; Trooper Pearson's testimony that the complainant's home was within fifteen to twenty feet of the dead-end road; the complainant's emotional state when speaking to the troopers; Trooper Pearson's description of the video shown to him by the complainant; defendant's explanations for going to the complainant's home, which did not include arranging visitation; and the fact that the hood of defendant's car was still warm. The decisions from other jurisdictions cited by defendant to support his argument are inapplicable here because they involve factual scenarios that differ significantly from this case.

Defendant argues that the evidence of the complainant's demeanor and the warmth of the car hood was minimally probative given his statement to troopers that he went over to the complainant's house hours before the troopers arrived. These inconsistencies were resolved by the jury in favor of the State, and we will not reweigh the evidence on appeal. See State v. Johnson, 2013 VT 116, ¶ 27, 195 Vt. 498 (explaining that this Court will not substitute its judgment for that of jury).

Finally, defendant claims that the court abused its discretion in admitting the portion of Trooper Pearson's body-camera video recording in which the trooper told defendant he couldn't go to the complainant's house, text or call her, or "do what you've been doing." Defendant argues that this evidence was prejudicial because it suggested that he had violated the RFA order in other ways that were not charged by the State. Defendant argues that the trial court previously found in a pretrial order that this portion of the video was more prejudicial than probative, and its subsequent decision to admit the above portion was inconsistent with that decision.

Prior to trial, defendant moved to exclude the body-camera footage in its entirety because it contained allegations that defendant had been driving while intoxicated and had violated the RFA order by texting and calling the complainant. After a hearing, the court issued an order permitting the State to use the first segments of the recordings, in which Trooper Pearson asked defendant why he went to the complainant's home and defendant responded that she had asked him for money. The court excluded the remaining portions of the recordings, holding that the troopers' subsequent statements that they could investigate defendant for DUI and arrest him were prejudicial and not probative of an issue in the case. The court stated, however, that the State "may be allowed to use the tapes in rebuttal or to corroborate statements the troopers make if their credibility is challenged."

During cross-examination of Trooper Pearson, defense counsel asked a series of questions suggesting that defendant may have been confused or made inaccurate statements due to intoxication and being woken up in the middle of the night. On redirect, the State offered the challenged snippet of the recording to rebut defense counsel's implication that defendant did not understand what was happening. Defendant objected that he had not attacked the troopers' credibility. The court responded that the snippet was offered to show that defendant understood what was happening, and "I don't see anything else otherwise prejudicial." Defense counsel responded, "Otherwise prejudicial, no, but just going off of your answer" to the motion in limine. The court concluded that the snippet was admissible for the purpose offered by the State.

The court did not abuse its discretion in admitting the snippet. Although the court did not specifically reference Vermont Rule of Evidence 403, it weighed the probative value of the evidence against the potential prejudicial effect. The court's decision to admit the snippet was consistent with its pretrial order, which warned that additional portions of the video could be admitted for purposes of rebuttal or to bolster credibility. Defense counsel opened the door to admitting the snippet by asking questions designed to create doubt about whether defendant understood the order or what he did wrong. The primary purpose of the snippet was to prove that defendant understood the RFA order and the officer's questions, not "to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case." State v. Noyes, 2021 VT 50, ¶ 42, 215 Vt. 182 (quotation omitted) (defining unfair prejudice for purposes of Rule 403 analysis). Defense counsel conceded below that the challenged snippet was not unduly prejudicial. Moreover, any potential confusion caused by the reference to texts and calls was mitigated by the court's jury

instructions, which were unobjected to and made clear that the State had to prove that defendant violated the condition requiring him to stay 200 feet away from the complainant and her residence by traveling to her home for a reason other than to arrange visitation. See State v. Farrow, 2016 VT 30, ¶ 18, 201 Vt. 437 (holding trial court acted within discretion in admitting evidence that defendant discontinued participation in field sobriety test, because evidence had probative value in showing consciousness of guilt and trial court's instruction to jurors mitigated potential prejudice identified by defendant). Accordingly, we see no error in the court's ruling.

Affirmed.

BY THE COURT:

_____
Harold E. Eaton, Jr., Associate Justice


_____
Karen R. Carroll, Associate Justice


_____
Nancy J. Waples, Associate Justice